[Cite as *In re S.D.*, 2016-Ohio-1493.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

IN RE: S.D.
    K.S.
    J.S.
    E.S.

C.A. Nos.     15CA010864
               15CA010867

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE Nos.    14JC42473
             14JC42474
             14JC42475
             14JC42476

DECISION AND JOURNAL ENTRY

Dated: April 11, 2016

SCHAFER, Judge.

{¶1} Appellants, Tanya U. ("Mother") and John S. ("Father), appeal from a judgment of the Lorain County Court of Common Pleas, Juvenile Division, that terminated their parental rights to their three minor children and placed them in the permanent custody of Lorain County Children Services ("LCCS"). Although Mother also appeals from the trial court's separate judgment that placed her oldest child in the legal custody of her maternal grandmother, she has not challenged any aspect of that judgment on appeal. For the reasons that follow, we affirm.

I.

{¶2} Mother is the biological mother of four minor children: S.D., born April 19, 1998; K.S., born February 28, 2003; J.S., born August 17, 2007; and E.S., born August 4, 2011. Father

is the biological Father of only K.S., J.S., and E.S., the children who are at issue in this permanent custody appeal.

{¶3} LCCS first became involved with this family during 2008, before E.S. was born. S.D., K.S., and J.S. were adjudicated neglected and dependent and placed under the protective supervision of LCCS because of domestic violence and substance abuse in the home and concerns about the ability of Mother and Father to meet the children's needs. Protective supervision was later terminated and the case was closed.

{¶4} LCCS again became involved with the family shortly after the birth of E.S. based on a referral that Mother was abusing drugs and was suffering from post-partum depression. LCCS worked with the family on a voluntary basis to address Mother's mental health and drug issues as well as renewed concerns about Father's substance abuse and domestic violence in the home. That case was also eventually closed.

{¶5} On June 11, 2014, LCCS filed complaints to begin this case, alleging that all four children were neglected and dependent because, among other things, the family was homeless. The children were later adjudicated neglected and dependent. K.S., J.S., and E.S. were placed in the temporary custody of LCCS and S.D. was later placed in the temporary custody of her maternal grandmother.

{¶6} In addition to ongoing substance abuse by the parents, domestic violence between them, and their lack of stable housing and income, LCCS became increasingly concerned about Mother's unstable mental health. Although the original case plan included a requirement that Mother manage mental health symptoms, if diagnosed in conjunction with her substance abuse assessment or treatment, Mother did not complete a substance abuse assessment during 2014, nor did she engage in any substance abuse treatment.

{¶7}   On September 5, 2014, Mother was admitted to an area hospital as a psychiatric patient because she was suffering from major depression, anxiety, and suicidal thoughts. She began taking psychiatric medication and was dismissed from the hospital four days later with instructions to follow up with community mental health treatment. Although Mother briefly started counseling at an outpatient facility, she attended only three sessions. The therapist believed that Mother needed to continue with treatment, but Mother did not return after the end of October 2014.

{¶8}   According to one of the caseworkers, Mother often behaved erratically and exhibited dramatic mood swings. Although Father would typically try to calm her, Mother sometimes behaved inappropriately during her visits with the children, which was upsetting to them. Mother would not comply with the caseworker's attempts to redirect her behavior and, more than once, threatened to harm the caseworker in the presence of the children.

{¶9}   Mother's behavior during her visit with the children on December 4, 2014, was so erratic that the caseworker ended the visit. Mother lunged at the caseworker and threatened to break her "f'ing neck," but backed off, stating that the caseworker was not worth a prison sentence. Mother then yelled that she hoped the caseworker had cancer and "died a slow, painful death." The children were visibly upset by Mother's outburst. The caseworker explained that she was more frightened by Mother's threats than she had ever been during her 15-year career, so she filed a police report against Mother. LCCS later assigned a different caseworker to this case. The guardian ad litem observed the incident and supported the decision of LCCS to amend the case plan.

{¶10}  The case plan was amended the next day to add a more comprehensive mental health component for Mother and to suspend her visitation with the children until she stabilized

her mental health through ongoing treatment. Mother filed no objections to the amended case plan, so it was formally adopted by the trial court. Mother did not pursue mental health treatment, however, so she had no visits with K.S., J.S., and E.S. for the remainder of the case.

{¶11} Father continued to have supervised visits with the children because his behavior was usually appropriate. Nevertheless, he was not allowed to have more frequent or unsupervised visits with the children during this case because he did not comply with the substance abuse component of the case plan. Father obtained a substance abuse assessment but he did not begin treatment for several months and attended only three counseling sessions. Father initially told the counselor that he had been sober for almost one year but later admitted that he had consumed six beers that morning after the counselor accused him of drinking. Father also tested positive for cocaine during this case.

{¶12} Mother also failed to comply with the substance abuse component of the case plan. Although she eventually met with a substance abuse counselor and agreed to engage in substance abuse treatment, she never returned to begin counseling. She did not regularly submit to drug testing and, when she did, she continued to test positive for controlled substances. Mother told LCCS and service providers that she had prescriptions for pain killers, but she never provided documentation or signed releases to enable the caseworker or service providers to verify that she had valid prescriptions. Moreover, Mother repeatedly tested positive for cocaine, a controlled substance that would not be prescribed by a physician to a patient.

{¶13} On March 27, 2015, LCCS moved for permanent custody of K.S., J.S., and E.S. The agency alleged that the children could not be returned to their parents' custody within a reasonable time or should not be returned to them and that permanent custody was in their best interests. Alternatively, the parents sought a six-month extension of temporary custody.

{¶14} The trial court held a hearing over a five-day period. Father failed to appear for the first four days but appeared for the final day of the hearing, during which he testified on his behalf. Mother left during the fourth day of the hearing. According to the maternal grandmother, Mother had become upset and wanted to go home. She did not return that day or for the final day of the hearing. After the conclusion of the hearing, the trial court terminated the parents' rights to K.S., J.S., and E.S., and placed the children in the permanent custody of CSB.

{¶15} Mother and Father separately appealed and their appeals were later consolidated. Mother raises three assignments of error and Father raises one, which will be rearranged and consolidated to facilitate review.

II.

**Mother's Assignment of Error II**

**The trial court erred in not granting [Mother's] motion to appoint an attorney for [K.S.]**

{¶16} Because Mother's second assignment of error pertains to the constitutionality of the permanent custody hearing, this Court will address it first. Mother asserts that the trial court erred in proceeding with the hearing without appointing independent trial counsel to represent K.S. because there was a conflict between her wishes and the opinion of the guardian ad litem. According to Mother, a conflict existed in this case because the guardian ad litem was recommending that K.S. be placed in the permanent custody of LCCS, but K.S. had expressed a desire to return to Mother's home.

{¶17} Although the trial court should appoint independent counsel for the child when the record demonstrates her wishes conflict with the recommendation of the guardian ad litem, this Court has repeatedly stressed that, "to demonstrate a 'conflict' between the child's wishes and the guardian's recommendation that permanent custody is in the child's best interest, the

record must demonstrate that the child has repeatedly and consistently expressed the affirmative desire to return to the parent's home." *In re B.W.*, 9th Dist. Medina No. 12CA0016-M, 2012-Ohio-3416, ¶ 42, citing *In re J.P.-M.,* 9th Dist. Summit Nos. 23694 & 23714, 2007-Ohio-5412, ¶ 56; *In re J.B.,* 9th Dist. Summit No. 23436, 2007-Ohio-620, ¶ 22-23. The record in this case fails to reveal that K.S. had expressed a consistent desire to return to Mother's home.

{¶18} The trial court heard evidence about the wishes of K.S. through the testimony of several witnesses, including the two caseworkers, the guardian ad litem, and the child's therapist. Mother points to evidence that K.S. told several people that she did not want to be adopted. There was substantial evidence before the trial court, however, that the foster parents would honor her wishes and not proceed with an adoption unless and until K.S. was ready. More significantly, the evidence about K.S. not wanting to be adopted was never linked to a desire to return to Mother's custody.

{¶19} Although K.S. once told the former caseworker that she wanted to go home, the caseworker explained that K.S. was very emotional at that time because she missed her family and was having trouble adjusting to her temporary placement. After that one occasion, K.S. did not again tell the caseworker that she wanted to go home. Moreover, the caseworker testified that K.S. never told her that she wanted to permanently live with Mother.

{¶20} The current caseworker testified that K.S. missed Mother and had feelings for her. Nevertheless, K.S. had told her that she did not want to return to her parents' home because she did not feel that they could provide for her basic needs, given their history of being unable to "hold it together."

{¶21} The mental health therapist who counseled K.S. testified that K.S. went back and forth about whether she even wanted to see Mother. The therapist explained that K.S. had not

often spoken about going home because she had conflicted feelings about Mother and had difficulty expressing her true feelings. She believed that K.S. was happy and adjusted to living with her current caregivers.

{¶22} The guardian ad litem testified that K.S. never told him that she wanted to go home and, in fact, had told him that she did not want to return to her parents' home. He further opined that K.S. was happy living with her current caregivers.

{¶23} Consequently, this Court's review of the evidence before the trial court, including the in camera interview of K.S., has revealed nothing to support Mother's argument that K.S. had consistently expressed a desire to return to Mother's custody. Because there was no conflict between the wishes of K.S. and the recommendation of the guardian ad litem, the trial court did not err by denying Mother's request to appoint independent counsel for K.S. Mother's second assignment of error is overruled.

### Mother's Assignment of Error I

**The trial court erred in not granting a six month extension [of temporary custody.]**

### Mother's Assignment of Error III

**The trial court erred in granting permanent custody when there was a strong parent/child bond.**

### Father's Assignment of Error

**The trial court erred and abused its discretion in violation of Father's [right under the] Fourteenth Amendment to the United States Constitution and Article I Section Sixteen of the Ohio Constitution in terminating [Father's] parental rights by granting permanent custody of [K.S., J.S., and E.S.] to [LCCS] when the trial court's judgment was against the manifest weight of the evidence.**

{¶24} The remaining assignments of error will be addressed together because they all pertain to the merits of the trial court's permanent custody decision. Before a juvenile court may

terminate parental rights and award permanent custody of children to a proper moving agency it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the children are abandoned, orphaned, have been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period, or that the children cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) that the grant of permanent custody to the agency is in the best interest of the children, based on an analysis under R.C. 2151.414(D). *See* former R.C. 2151.414(B)(1)[1] and 2151.414(B)(2); *see also In re William S.*, 75 Ohio St.3d 95, 99 (1996).

**{¶25}** The parents challenge the trial court's findings on each prong of the permanent custody test. Although they also assert that CSB failed to make reasonable efforts to reunify them with their children, neither parent preserved that challenge for appellate review. Following the adjudicatory and dispositional hearings, the magistrate found that LCCS had exerted reasonable efforts to return the children and prevent their continued removal from the custody of Mother and Father. Neither parent challenged any of those findings through timely objections. Consequently, they have forfeited all but plain error. *In re B.C.*, 9th Dist. Summit Nos. 26976, 26977, 2014-Ohio-2748, ¶ 24, citing Juv.R. 40(D)(3)(b)(iv). Moreover, because the record does not include transcripts of those hearings, this Court must presume propriety of the reasonable efforts findings. *See In re T.K.*, 9th Dist. Summit No. 24006, 2008-Ohio-1687, ¶ 22. At the permanent custody hearing, the trial court was not required to again determine whether CSB had made reasonable efforts toward reunification, particularly given that neither parent argued that CSB had failed to make reasonable reunification efforts in this case. *See In re C.F.*, 113 Ohio

---

[1] Section 2151.414(B)(1) was amended effective September 17, 2014.

St.3d 73, 2007-Ohio-1104, ¶ 41-43; *In re P.W.T.*, 9th Dist. Wayne No. 11CA0020, 2011-Ohio-5858, ¶ 11; *In re K.H.*, 9th Dist. Summit No. 22765, 2005-Ohio-6323, ¶ 9-10.

{¶26} The trial court found that the first prong of the permanent custody test had been satisfied because K.S., J.S., and E.S. could not be returned to the custody of Mother and Father within a reasonable time or should not be returned to them because they had failed to substantially remedy the conditions that caused the children to be placed outside the home. *See* R.C. 2151.414(E)(1).[2] Both parents challenge this finding.

{¶27} There was overwhelming evidence before the trial court to support its conclusion that both parents had failed to substantially remedy the conditions that caused their children to be removed from their home and to remain outside their custody. The children were removed from the parents' custody because both parents were homeless, lacked stable income, suffered from untreated substance abuse, and Mother also suffered from untreated mental illness.

{¶28} At the time of the hearing, neither parent had secured stable income or housing. Moreover, neither had consistently addressed their substance abuse and/or mental health problems. Mother continued to abuse drugs and her mental health remained erratic throughout this case. Despite the case planning efforts by LCCS over a period of several years, which ultimately culminated in her having no contact with her children for a period of several months, Mother refused to follow through with either mental health or substance abuse treatment.

{¶29} Father likewise continued abusing drugs and alcohol throughout this case. The guardian ad litem testified that he had visited the parents' home the week before the hearing and saw Father drinking at that time. Father admitted at the hearing that he had been unable to

---

[2] Although the trial court made an alternate finding that R.C. 2151.414(E)(4) was satisfied because the parents had demonstrated a lack of commitment to the children, this Court confines its review to the trial court's finding under R.C. 2151.414(E)(1).

remain sober, that he was about to be evicted from his current home, and that he was "not really sure what's going on with me." He conceded that he needed to achieve sobriety and testified that he planned to do so. Nonetheless, he was not involved in any treatment at that time.

{¶30} The parents also challenge the trial court's finding that permanent custody was in the best interests of K.S., J.S., and E.S. Mother asserts that the trial court should have instead granted a six-month extension of temporary custody. The trial court must conduct a best interest analysis to determine whether to place the child in the permanent custody of the agency or to extend temporary custody. If permanent custody was in the children's best interests, the alternative disposition of extending temporary custody was not. *See In re I.A.*, 9th Dist. Summit No. 26642, 2013-Ohio-360, ¶ 10. Moreover, the trial court would have authority to extend temporary custody only if it also found that Mother and Father had made "significant progress" on the case plan and that there was reasonable cause to believe that the children would be reunified with them or otherwise permanently placed during the extension period. R.C. 2151.415(D)(1). As explained above, neither parent had made even minimal progress in working on their case plan goals.

{¶31} We agree with the trial court that LCCS demonstrated by clear and convincing evidence that permanent custody was in the children's best interests. When determining the children's best interests under R.C. 2151.414(D), the juvenile court must consider all "relevant" factors, including the interaction and interrelationships of the children, the children's wishes, the custodial history of the children, their need for permanence in their lives, and any factors under R.C. 2151.414(E)(7) through (11), if applicable. *See In re R.G.,* 9th Dist. Summit Nos. 24834, 24850, 2009-Ohio-6284, ¶ 11.

{¶32} During this case, the parents' interaction with their children was limited to weekly, supervised visits because they did not comply with the mental health and substance abuse components of the case plan. Mother's visits were terminated more than seven months before the hearing because LCCS, the guardian ad litem, and trial court agreed that her untreated mental health problems posed an emotional threat to the children. Although Mother now argues that the trial court committed error by terminating her visits with the children, she did not timely raise this issue in the trial court. Moreover, the record reveals that Mother's untreated mental illness caused her to behave erratically around the children, which was upsetting to them. The older children, K.S. and J.S., were angry at Mother and J.S. had expressed fear of Mother and did not want to see her. When E.S. expressed concern that Mother was not visiting, the caseworker asked Mother to write a letter to reassure the child. Four months later, Mother eventually wrote a letter to E.S.

{¶33} Father's supervised visits continued throughout the case but he sometimes failed to come and he rarely stayed for the entire visit. The children were disappointed when Father did not come and, as time went by, K.S. and J.S. refused to come to the visits because they did not want to see Father.

{¶34} On the other hand, in the foster home where K.S., J.S., and E.S. had been placed together, they had become closely bonded with each other and the foster parents, who were willing to provide all three with a permanent home. The foster parents had also arranged for the children to see their maternal grandmother and their older sibling and planned to continue facilitating those visits.

{¶35} K.S. and J.S. had both expressed to the guardian ad litem that they were happy in the foster home and that they did not want to return to their parents' custody. The guardian ad

litem opined that E.S. was too young to express her wishes about where she wanted to live. He believed that she was also happy in the foster home and that permanent custody was in her best interest.

{¶36} By the time of the hearing, K.S., J.S., and E.S. had spent more than a year living outside their parents' custody. While living with their parents, they had been exposed to years of domestic violence, substance abuse, Mother's erratic mental health, and their parents' inability to provide for their basic needs in a safe and stable home environment. They were in need of a legally secure permanent placement, but neither parent was able to provide them with a suitable home and LCCS had been unable to find any relatives who were willing and able to do so. Therefore, the trial court reasonably concluded that a legally secure permanent placement would only be achieved by placing the children in the permanent custody of LCCS.

{¶37} Consequently, the evidence before the trial court clearly and convincingly supported its decision to place K.S., J.S., and E.S. in the permanent custody of LCCS. Mother's first and third assignments of error and Father's sole assignment of error are overruled.

III.

{¶38} The parents' assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JULIE A. SCHAFER
FOR THE COURT

HENSAL, P. J.
BALDWIN, J.
CONCUR.

(Baldwin, J., of the Fifth District Court of Appeals, sitting by assignment.)

APPEARANCES:

ROBERT CABRERA, Attorney at Law, for Appellant.

BARBARA WEBBER, Attorney at Law, for Appellant.

DENNIS P. WILL, Prosecuting Attorney, and EMILY W. KIRSCH, Assistant Prosecuting Attorney, for Appellee.

CLAUDE THOMPSON, Guardian ad Litem.