[Cite as *In re N.M.*, 2016-Ohio-5212.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

IN RE: N.M.

C.A. No.     28118

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.     DN 14-10-655

DECISION AND JOURNAL ENTRY

Dated: August 3, 2016

MOORE, Judge.

{¶1}   Appellant, Deborah M. ("Mother"), appeals from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated her parental rights to her minor child.  This Court affirms.

## I.

{¶2}   Mother is the biological mother of three minor children who have been removed from her custody in three separate juvenile court cases.  Mother's oldest two children were removed from her custody in Portage County more than ten years ago, have since been adopted, and are not parties to this appeal.  A brief summary of facts pertaining to those children is relevant to this appeal, however.

{¶3}   Mother's oldest child was born in November 2000 and was removed from her custody when he was less than five months old.  The record includes only select documents from

that child's case, which reveal few details except that Mother eventually voluntarily surrendered her parental rights.

{¶4} Mother's second child was born in January 2004 and was removed from her custody shortly after birth because of Mother's addiction to crack cocaine. Mother did not work on her case plan or consistently attend court hearings. She also failed to maintain a relationship with the child. Portage County Department of Job and Family Services eventually sought and obtained permanent custody. The trial court involuntarily terminated Mother's parental rights to that child in February 2005.

{¶5} The only child at issue in this appeal is N.M., born October 10, 2014. The child's father is not a party to this appeal. The day N.M. was born, CSB filed a complaint to remove her from Mother's custody because Mother had tested positive for cocaine the day before. Mother admitted that she had used crack cocaine throughout the pregnancy and that she had used it as recently as two days before N.M. was born. Mother also lacked adequate baby supplies and a stable home for the child and had failed to receive regular prenatal care during the pregnancy. Mother later stipulated that N.M. was a dependent child and agreed to her being placed in the temporary custody of CSB.

{¶6} The reunification goals in this case again focused on Mother resolving her long-term drug addiction by obtaining a drug and alcohol assessment and following through with all treatment recommendations. The case plan also required Mother to attend parenting classes, obtain stable housing, and receive consistent mental health services because she had a long history of mental health problems. Although she had been involved in mental health treatment and had taken psychiatric medications for several years, she was not involved in any mental health treatment when this case began.

{¶7} Over the next several months, Mother failed to substantially comply with any of the reunification goals of the case plan. Mother began several outpatient and inpatient drug treatment programs, but did not consistently participate in any of them and continued to test positive for cocaine.

{¶8} In November 2014, Mother completed a drug assessment and scheduled an appointment to begin intensive outpatient drug treatment but did not come to the appointment and did not schedule or attend any future sessions with the program. She did not follow through with any drug treatment for the next several months.

{¶9} During March 2015, Mother entered an inpatient drug treatment program but left the facility within three days. According to her addictions counselor at that facility, Mother reported a long history of drug abuse but minimized the problem and did not seem to be interested in becoming sober. The counselor opined that Mother resented the strict rules of the program and was looking for a reason to leave the facility from the moment she arrived. Mother told the counselor that she needed emergency medical care for extreme abdominal pain and left the program. The counselor did not believe Mother's claim that she had a medical reason to leave because she exhibited no external symptoms of being in pain. Mother would continue to insist that she left that facility for medical reasons, yet she never provided verification that she received medical treatment after she left the facility.

{¶10} Approximately six months later, Mother entered another inpatient treatment program but left that facility after approximately one week. Mother reported that she had a ruptured cyst that was bleeding and she could not get medical attention unless she left and went to a hospital emergency room. Although the facility's records note that Mother left for medical reasons, Mother provided no proof to CSB or the court that she had, in fact, obtained medical

care after she left the facility. In fact, according to the CSB caseworker and a provider at the inpatient facility, Mother told them that she was not ready to stop using drugs at that point in time.

{¶11} On September 25, 2015, CSB moved for permanent custody of N.M., alleging several alternate grounds under R.C. 2151.414(E). Mother alternatively moved for a six-month extension of temporary custody.

{¶12} Prior to CSB moving for permanent custody, Mother was convicted of a theft offense in Akron Municipal Court and ordered to participate in its drug court program. During October and November of 2015, Mother entered an intensive outpatient drug treatment program but did not successfully complete that program because she missed several appointments and also tested positive for cocaine while attending the program. She admitted that, during the program while outside the facility, she had smoked crack cocaine with a neighbor.

{¶13} Mother entered another inpatient drug treatment program shortly before the permanent custody hearing. During her first month in the program, however, Mother left the facility on a pass for her birthday and became intoxicated with several drinks of hard liquor. Mother admitted that she had "messed up" and received sanctions when she returned to the facility because she had violated the rules.

{¶14} At the time of the permanent custody hearing, Mother had been sober for only 15 days, during which time she had been confined to an inpatient treatment facility. Moreover, she had not started mental health treatment or parenting classes, nor had she obtained stable housing.

{¶15} Following a hearing on the alternate dispositional motions, the trial court terminated Mother's parental rights and placed N.M. in the permanent custody of CSB. Mother

appeals and raises two assignments of error that will be addressed together because they are closely related.

II.

## ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED IN FINDING THAT IT IS IN [N.M.'S] BEST INTEREST THAT SHE BE PLACED IN THE PERMANENT CUSTODY OF [CSB] AS THE [AGENCY] FAILED TO MEET ITS BURDEN OF PROOF AND THE TRIAL COURT'S DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING MOTHER'S MOTION FOR A SIX-MONTH EXTENSION.

{¶16} Mother's first assignment of error is that the trial court's decision was not supported by the evidence presented at the hearing. Before a juvenile court may terminate parental rights and award permanent custody of children to a proper moving agency it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the children are abandoned, orphaned, have been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period, or that the children cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) that the grant of permanent custody to the agency is in the best interest of the children, based on an analysis under R.C. 2151.414(D). *See* R.C. 2151.414(B)(1) and 2151.414(B)(2); *see also In re William S.*, 75 Ohio St.3d 95, 99 (1996).

{¶17} The trial court found that the first prong of the test was satisfied for several alternate reasons, including that Mother's parental rights to a sibling of N.M. had been involuntarily terminated and Mother had failed to demonstrate by clear and convincing evidence that, "notwithstanding the prior termination, [she] can provide a legally secure permanent

placement and adequate care for the health, welfare, and safety of the child." *See* R.C. 2151.414(E)(11). Mother does not challenge that finding but instead confines her argument to the best interest prong of the permanent custody test.

{¶18} Rather than placing N.M. in the permanent custody of CSB, Mother asserts that the trial court should have granted a six-month extension of temporary custody. The trial court must conduct a best interest analysis to determine whether to place the child in the permanent custody of the agency or to extend temporary custody. If permanent custody was in the best interest of N.M., the alternative disposition of extending temporary custody was not. *See In re I.A.*, 9th Dist. Summit No. 26642, 2013-Ohio-360, ¶ 10. Moreover, the trial court would have had authority to extend temporary custody only if it also found that Mother had made "significant progress" on the case plan and that there was reasonable cause to believe that N.M. would be reunified with her or otherwise permanently placed during the extension period. R.C. 2151.415(D)(1). As detailed above, Mother had not made significant progress on the reunification goals of the case plan.

{¶19} We agree with the trial court that CSB demonstrated by clear and convincing evidence that permanent custody was in the best interest of N.M. When determining the child's best interests under R.C. 2151.414(D), the juvenile court must consider all relevant factors, including the interaction and interrelationships of the child, her wishes, the custodial history of the child, and her need for permanence in her life. *See In re R.G.,* 9th Dist. Summit Nos. 24834, 24850, 2009-Ohio-6284, ¶ 11. The trial court was also required to consider any relevant factors under R.C. 2151.414(E)(7) through (11), which include that Mother's rights to a sibling of N.M. were involuntarily terminated in 2005. *See* R.C. 2151.414(E)(11); *see also* R.C. 2151.414(D)(1)(e).

**{¶20}** Mother's interaction with N.M. throughout the child's life had been limited to weekly, supervised visits and Mother missed several of her scheduled visits with her. On the other hand, N.M. had been living with the same foster parents throughout this case and had assimilated into that family. The foster parents expressed an interest in adopting N.M. if CSB was granted permanent custody.

**{¶21}** Because N.M. was only 13 months old at the time of the hearing, the guardian ad litem spoke on her behalf. The guardian opined that permanent custody was in the best interest of N.M. because Mother had made minimal progress toward achieving sobriety and had taken no steps to accomplish any of the other reunification goals of the case plan.

**{¶22}** N.M. had spent her entire life outside of Mother's custody and was in need of a legally secure permanent placement. CSB had investigated 14 relatives for potential placement of the child, but none was willing and able to provide her with a suitable permanent home. Because Mother was not able to provide N.M. with a stable home at that time or in the foreseeable future, the trial court reasonably concluded that a legally secure permanent placement for the child would only be achieved by placing her in the permanent custody of CSB.

**{¶23}** Pursuant to R.C. 2151.414(D)(1)(e), the trial court was also required to consider the fact that Mother's rights to a sibling of N.M. were involuntarily terminated in 2005 and Mother had failed to present any evidence, much less clear and convincing evidence, that "notwithstanding the prior termination, [she] can provide a legally secure permanent placement and adequate care for the health, welfare, and safety of the child." *See* R.C. 2151.414(E)(11). In fact, Mother continued to struggle with the same drug addiction that had been an obstacle to her parenting ability more than ten years ago. During this case, despite entering numerous drug treatment programs pursuant to the orders of the juvenile and municipal drug court courts,

Mother had made only minimal efforts toward achieving sobriety. Mother did not engage in any consistent drug treatment and continued to test positive for illegal drugs throughout this case.

**{¶24}** Consequently, Mother has failed to demonstrate that the trial court's permanent custody judgment was not supported by clear and convincing evidence. Mother's first and second assignments of error are overruled.

### III.

**{¶25}** Mother's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

CARLA MOORE
FOR THE COURT

CARR, P. J.
WHITMORE, J.
<u>CONCUR.</u>

<u>APPEARANCES:</u>

DANIEL R. BACHE, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.

JOSEPH KERNAN, Guardian ad Litem.