[Cite as *In re A.H.*, 2020-Ohio-1355.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

IN RE: A.H.
     J.H.

C.A. No.     29553


APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE Nos.    DN 18 04 0350
                 DN 18 04 0351

DECISION AND JOURNAL ENTRY

Dated: April 8, 2020

---

CALLAHAN, Presiding Judge.

{¶1} Appellant Mother appeals the judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated her parental rights and placed her children in the permanent custody of Summit County Children Services Board ("CSB"). This Court affirms.

I.

{¶2} Mother and Father are the biological parents of two boys, A.H. (d.o.b. 11/29/13) and J.H. (d.o.b. 10/29/15). Mother is also the biological mother of an older child who is in the legal custody of a third party. That child is not a subject of this appeal. Although Mother and Father were still married during the time of the proceedings, they had ended their relationship and Father abandoned the children. Although he was properly served, Father did not participate below; and he has not challenged the judgment on appeal.

{¶3} In April 2018, the children's maternal grandmother filed a complaint seeking legal custody of A.H. and J.H. Based on concerns regarding the home environment, the juvenile court

instead issued an emergency order of temporary custody of the children to CSB. The agency then filed complaints alleging the children to be abused (endangered), neglected, and dependent.

{¶4} Mother did not appear for the adjudicatory hearing, but her attorney asserted that Mother stipulated to a finding that the children were dependent. CSB dismissed its allegations of abuse and neglect, and the juvenile court adjudicated A.H. and J.H. dependent children. After a dispositional hearing, the juvenile court placed the children in the temporary custody of CSB and adopted the agency's proposed case plan as the order of the court. Mother's case plan objectives addressed basic needs (income/employment, safe and stable housing, working utilities), and substance abuse and mental health issues. Mother was granted supervised visitation with the children.

{¶5} Ten months after filing its complaints, CSB moved for permanent custody. The agency alleged that Father had abandoned the children, that the children cannot within a reasonable time or should not be placed with either parent based on a failure to remedy concerns, and that an award of permanent custody was in the best interest of the children. Mother filed a motion for a six-month extension of temporary custody in which she alleged she had made significant progress in terms of sobriety which increased the likelihood of further case plan compliance.

{¶6} The juvenile court held a final dispositional hearing six months after CSB filed its motion for permanent custody. The trial court denied Mother's motion for a first six-month extension of temporary custody, granted CSB's motion for permanent custody, and terminated Mother's parental rights. Mother filed a timely appeal and raises one assignment of error for review.

II.

**ASSIGNMENT OF ERROR**

THE TRIAL COURT'S DECISION GRANTING PERMANENT CUSTODY OF THE MINOR CHILDREN TO [CSB] WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶7} Mother argues that the juvenile court's award of permanent custody of A.H. and J.H. to CSB was against the manifest weight of the evidence. This Court disagrees.

{¶8} In considering whether the juvenile court's judgment is against the manifest weight of the evidence, this Court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new [hearing] ordered." (Internal quotations and citations omitted.) *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20. When weighing the evidence, this Court "must always be mindful of the presumption in favor of the finder of fact." *Id.* at ¶ 21.

{¶9} Before a juvenile court may terminate parental rights and award permanent custody of a child to a proper moving agency, it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned; orphaned; has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period; the child or another child of the same parent has been adjudicated abused, neglected, or dependent three times; or that the child cannot be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) that the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D)(1). R.C. 2151.414(B)(1) and 2151.414(B)(2); *see also In re William S.*, 75 Ohio St.3d 95, 98-99 (1996). The best interest factors include: the interaction and interrelationships of the child, the wishes of the child, the custodial history of the child, the child's need for permanence and whether that can be achieved without a grant of permanent custody, and whether any of the factors outlined in R.C. 2151.414(E)(7)-(11) apply. R.C. 2151.414(D)(1)(a)-

(e); *see In re R.G.*, 9th Dist. Summit Nos. 24834, 24850, 2009-Ohio-6284, ¶ 11.  Clear and convincing evidence is that which will "produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established."  (Internal quotations omitted.)  *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 368 (1985), quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶10}  Mother concedes that Father had abandoned the children.  She challenges both the first-prong finding that the children cannot or should not be returned to her and that an award of permanent custody was in the best interest of the children.

{¶11}  In support of its first-prong allegation, CSB alleged in its motion for permanent custody that (1) despite reasonable case planning and diligent efforts by the agency, Mother continuously and repeatedly failed to substantially remedy the conditions that caused the children's placements outside the home pursuant to R.C. 2151.414(E)(1); (2) Mother has a chronic mental illness, chronic emotional illness, and/or chemical dependency problem that is so severe that Mother is unable to provide the children with an adequate permanent home at present and, as anticipated, within one year pursuant to R.C. 2151.414(E)(2); and (3) Mother for any reason is unwilling to provide food, clothing, shelter, or other basic necessities for the children; or is unwilling to prevent the children from suffering any type of abuse or neglect pursuant to R.C. 2151.414(E)(14).  After the permanent custody hearing, the juvenile court expressly found that Mother had failed to remedy the conditions that brought the children into care.

{¶12}  The clear and convincing evidence adduced at the permanent custody hearing supported the juvenile court's finding that Mother continuously failed to substantially remedy the conditions that caused the children to be placed outside her home.  Mother acknowledged a lack of self-understanding and self-worth throughout her life.  She reported having been diagnosed with

bipolar disorder at a young age. She was exposed to prolific drug use and abuse in a home she shared with her mother and siblings. After being married twice to abusive men and bearing three children, Mother turned to daily use of methamphetamine to help her cope. She explained that methamphetamine helped her "spiritually" to figure out who she was and to get closer to God. Mother admitted having visual and aural hallucinations because the effects of methamphetamine prevented her from sleeping for long periods of time. Although it was not her drug of choice, she also admitted using marijuana frequently because it would help her sleep.

{¶13} Throughout the case, Mother either admitted to the caseworker that she had been using drugs, or she tested positive for methamphetamine, marijuana, and occasionally ecstasy and cocaine. Early in the case, Mother entered a residential treatment program at the Neil Kennedy Recovery Center ("Kennedy Recovery") to "clear [her] mind" but left after a week because she was feeling claustrophobic and anxious about losing job opportunities and visitation time with the children. Kennedy Recovery reported to the CSB caseworker that, while they could help to address Mother's substance abuse issues, Mother's mental health issues were more significant than the center could manage.

{¶14} Mother later attended an intake appointment at Community Health Center, which could have rendered a dual diagnosis addressing both Mother's substance abuse and mental health issues. After the initial intake appointment, however, Mother never returned or followed up with recommended services, including participating in a women's recovery group and a sober housing program. Mother declined to participate in any drug treatment programs during the case, instead choosing to simply try to avoid drugs on her own. In fact, Mother testified that she had no plans to engage in substance abuse treatment. Because she used drugs in part to have the "energy just to be here[,]" Mother planned to maintain energy through physical exercise and listening to music

instead. Although she spoke weekly by video to a counselor, Mother claimed there were no steps to follow in a recovery process, and no guidelines she had to follow to continue counseling. Mother is not involved in Alcoholics Anonymous or Narcotics Anonymous and does not have a sobriety sponsor. Her sole plan was simply to avoid substances.

{¶15} While Mother had not used methamphetamine for about seven months at the time of the permanent custody hearing, she continued to test positive for other substances, including marijuana and cocaine. Mother's two most recent drug screens prior to the hearing indicated positive results for alcohol. Both the CSB caseworker and Mother's counselor testified that sobriety requires abstinence from all substances, not merely Mother's drug of choice (methamphetamine). Given her continuing use of mind- and mood-altering substances, Mother has not addressed her addiction, substance abuse, and mental health issues, which contributed to the need for removal of the children from her care.

{¶16} In addition, Mother has not demonstrated the ability to maintain safe and stable housing or employment which would enable her to provide for her own basic needs, let alone the needs of the children. Throughout the case, Mother has worked sporadically, mainly "under the table." In the two months prior to the hearing, Mother obtained and left three different jobs. She failed to take advantage of services that could help her secure housing. Community Health Center tried to help her obtain sober housing, but Mother did not follow through. She applied for housing with the Akron Metropolitan Housing Authority but also did not follow through on that agency's requirements. Although she spent time at Harvest Home, Mother left after a month to live with some friends in a hotel room. Mother's most recent housing situation ended when the man with whom she was living left, and the property owner told Mother to leave. Accordingly, Mother has still not demonstrated the means to support and safely house herself or the children.

{¶17} CSB established by clear and convincing evidence that, despite the agency's reasonable and diligent efforts, Mother failed continuously and repeatedly to substantially remedy the conditions that caused the removal of A.H. and J.H. from home. Under these circumstances, the juvenile court's finding that the children could not be placed with Mother within a reasonable time or should not be placed with Mother was not against the manifest weight of the evidence.

{¶18} Turning to the second prong, this Court concludes that CSB further met its burden of proving that the termination of parental rights was in the best interest of the children.

Custodial history of the children

{¶19} A.H. and J.H. were four-and-a-half and two-and-a-half years old, respectively, when they were removed from Mother's home. The initial foster mother could not maintain the children because of her obligation to help care for an ill grandchild. The foster mother's niece and her husband had spent time with A.H. and J.H., frequently providing respite care when the foster mother needed assistance. Deciding that they wished to provide a home for the children, the couple became licensed as a foster-to-adopt home. The children have remained in that second foster home where they are comfortable and all their needs are being met.

Interactions and interrelationships of the children

{¶20} A.H. and J.H. are very polite and well-behaved children. They are well settled into their current foster home and are closely bonded with the entire foster family. The children are particularly bonded with one another. Mother visits with the children once a week at the Family Interaction Center. Since she stopped using methamphetamine, Mother has been more engaged with the children during visits. Although the children are always happy to see Mother, they show no sadness at the end of visits.

Wishes of the children

{¶21} The children are too young to express their wishes regarding custody. The guardian ad litem recommended that the children be placed in the permanent custody of CSB based on Mother's ongoing substance abuse and failure to attain sustained recovery, and her inability to provide for the basic needs of the children due to a lack of housing and income.

The children's need for permanence

{¶22} The children were removed from an unstable and unsafe home where the occupants used drugs and were verbally and physically abusive. Mother was also suffering from mental health and drug-related issues that caused her to hallucinate and behave erratically. A.H. and J.H. have attained stability and security in the foster home where they enjoy relationships with extended family members. The children are comfortable in the foster home, and the foster parents wish to adopt them.

{¶23} CSB developed case plan objectives designed to give Mother the ability to provide a safe and stable environment for the children. Despite reasonable and diligent efforts by the agency to assist Mother, she failed to take advantage of services offered. Mother failed to participate in substance abuse treatment or engage in a meaningful way in mental health services. Although Mother has weekly video sessions with a counselor, she was unable to explain any plan, goals, or tools to address her issues. Instead, Mother explained counseling as merely an opportunity for her to talk. Although her counselor believed that Mother was showing some progress, the counselor was not aware of Mother's prior diagnosis for bipolar disorder; her recent use of alcohol, marijuana, and cocaine; or the role Mother had played in failing to follow through with services. Based on Mother's self-reporting, the counselor believed that Mother had been trying to engage in treatment, employment, and housing services but that they simply did not "pan out" for her.

{¶24} Although Mother had not used methamphetamine for about seven months at the time of the hearing, she had not attained sobriety. Mother tested positive for marijuana, ecstasy, and cocaine a few months before the hearing, and positive for alcohol very shortly before the hearing. The CSB caseworker testified that Mother did not understand and had not addressed her addiction issues, instead merely substituting other substances (e.g., alcohol) and activities (e.g., sexual relations) for methamphetamine to help her cope with past traumas.

{¶25} Mother had not obtained safe and stable housing. She continued to move from place to place as relationships soured with roommate after roommate. She did not have stable employment and habitually relied on others, particularly men who took advantage of her, for her basic needs.

Applicability of R.C. 2151.414(E)(7)-(11) factors

{¶26} None of the above statutory factors are applicable to this case.

Conclusion

{¶27} Based on a review of the record, this is not the exceptional case where the finder of fact clearly lost its way and created a manifest miscarriage of justice in awarding permanent custody of A.H. and J.H. to CSB. The clear and convincing evidence demonstrates that the children require a safe and stable environment that Mother cannot provide. Despite discontinuing her use of methamphetamine, Mother has not attained sobriety. She continues to use substances to cope with past traumas and mental health issues. She has no intention of participating in substance abuse treatment, believing that she can simply avoid using. Mother has not acquired an understanding of the effect of her mental health issues on her behavior and functioning. She has failed consistently to obtain safe and stable housing or a source of income to meet her basic needs or those of the children.

{¶28} The children are safe, stable, and secure in a foster home where they are embraced as family. The foster parents wish to adopt the children. Despite their enjoyment in spending time with Mother during visits, the children share a significantly greater bond with the foster family. Under the circumstances, the juvenile court's finding that an award of permanent custody of A.H. and J.H. is in the best interest of the children is not against the manifest weight of the evidence.

{¶29} To the extent that Mother argues that the juvenile court's denial of her motion for a six-month extension of temporary custody was against the manifest weight of the evidence, this Court disagrees. R.C. 2151.415(D)(1) allows the juvenile court to extend the agency's temporary custody for six months if there is clear and convincing evidence that (1) an extension is in the best interest of the child, (2) there has been significant case plan compliance, and (3) there is reasonable cause to believe that reunification will occur within the period of extension. The juvenile court's decision to grant or deny an extension of temporary custody will not be reversed absent an abuse of discretion. *In re A.S.*, 9th Dist. Summit No. 28743, 2017-Ohio-8984, ¶ 11.

{¶30} Mother filed her motion for a six-month extension on April 15, 2019, when the case had been pending for one year. A six-month extension of temporary custody would have encompassed the time period through the middle of October 2019. Despite Mother's ability to continue to work on case plan objectives for four months before the dispositional hearing, she failed to demonstrate significant compliance, as explained above. In addition, based on Mother's ongoing lack of sobriety, failure to address her mental health issues, and lack of income and suitable housing, there was no evidence to support a reasonable belief that the children could be reunified with her within the remaining period of a six-month extension of temporary custody. Finally, as this Court has already determined that an award of permanent custody was in the children's best interest, "'the alternative disposition of extending temporary custody was not.'"

*See id.*, quoting *In re S.D.*, 9th Dist. Lorain Nos. 15CA010864 and 15CA010867, 2016-Ohio-1493, ¶ 30.

**{¶31}** Based on the above discussion, the juvenile court did not err in terminating Mother's parental rights and awarding permanent custody of A.H. and J.H. to CSB. Mother's assignment of error is overruled.

III.

**{¶32}** Mother's sole assignment of error is overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

_____

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____

LYNNE S. CALLAHAN

FOR THE COURT

CARR, J.
SCHAFER, J.
CONCUR.

APPEARANCES:

ALAN M. MEDVICK, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO GUEST, Assistant Prosecuting Attorney, for Appellee.