[Cite as *In re Co.J.*, 2020-Ohio-538.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
### HANCOCK COUNTY

IN RE:

    **Co.J.,**                                **CASE NO. 5-19-15**

**ADJUDICATED NEGLECTED AND
DEPENDENT CHILD.**

**[MONTANA JOHNSON - APPELLANT]**        **O P I N I O N**
**[MICHAEL JOHNSON - APPELLANT]**

IN RE:

    **D.J.,**                                 **CASE NO. 5-19-16**

**ADJUDICATED NEGLECTED AND
DEPENDENT CHILD.**

**[MONTANA JOHNSON - APPELLANT]**        **O P I N I O N**
**[MICHAEL JOHNSON - APPELLANT]**

IN RE:

    **A.J.,**                                  **CASE NO. 5-19-17**

**ADJUDICATED NEGLECTED AND
DEPENDENT CHILD.**

**[MONTANA JOHNSON - APPELLANT]**        **O P I N I O N**
**[MICHAEL JOHNSON - APPELLANT]**

IN RE:

    **Ch.J.,**                                **CASE NO. 5-19-18**

**ADJUDICATED DEPENDENT CHILD.**

**[MONTANA JOHNSON - APPELLANT]**        **O P I N I O N**
**[MICHAEL JOHNSON - APPELLANT]**

Case Nos. 5-19-15, 16, 17, 18

---

**Appeals from Hancock County Common Pleas Court
Juvenile Division
Trial Court Nos. 20163047, 20163048, 20163049, 20173004**

**Judgments Affirmed**

**Date of Decision: February 18, 2020**

---

**APPEARANCES:**

*Timothy J. Hoover* **for Appellant, Michael Johnson**

*Angela M. Elliott* **for Appellant, Montana Johnson**

*Wesley R. True* **for Appellee**

**ZIMMERMAN, J.**

{¶1} This is an appeal from the May 17, 2019 decision of the Hancock County Court of Common Pleas, Juvenile Division, which terminated the parental rights of appellant, Montana Johnson, mother of Co.J., D.J., A.J. ("Montana"), and step-mother of Ch.J. ("step-mother"), and appellant, Michael Johnson, father of Co.J., D.J., A.J. and Ch.J. ("Michael"), and granted permanent custody of their minor children to Hancock County Department of Job and Family Services (the "agency"). For the reasons that follow, we affirm.

Case Nos. 5-19-15, 16, 17, 18

{¶2} Montana and Michael filed separate appeals; the appeals were consolidated. (Case No. 05-19-15, June 14, 2019 JE); (Case No. 05-19-16, June 14, 2019 JE); (Case No. 05-19-17, June 14, 2019 JE); and (05-19-18, June 14, 2019 JE). Montana's appointed counsel filed a brief in accordance with *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396 (1967), and did not set forth any potential assignments of error. Michael set forth two assignments of error in his brief.[1]

### Assignment of Error No.1

**The trial court's award of permanent custody of the children, Co.J., D.J. A.J. and Ch.J. to the Hancock County Job and Family Services—Children's Protective Services Unit was against the manifest weight of the evidence.**

### Assignment of Error No.2

**The Agency's case planning and efforts were not reasonable and diligent under the circumstances of the case.**

*Background*

{¶3} Ch.J., born in 2003, to her parents, Theresa Johnson ("Theresa") and Michael who were married at the time of her birth.[2] (May 7, 2019 Tr., Vol. III, at

---

[1] Michael's second assignment of error in the "Assignments of Error" section of his brief is a variation of what is set out in the "Law and Argument" portion of his brief. (Appellant, Michael's Brief at 4, 14); *See* App.R. 16(A)(3), (7). Taking into account that we are to determine appeals on the merits of the assignments of error set forth under App.R. 16, we will review the assignments of error as worded in the "Assignments of Error" portion of this brief and duplicated by the Appellee in its brief. *Id.*; *Id.*; (Appellee's Brief at 2, 4, 16); *See also* App.R. 12(A)(1)(b); *State v. Echols*, 2d Dist. Montgomery Nos. 14373, 14457, 14460, 14637, 14639, and 14679, 1995 WL 118025 (Mar. 15, 1995), fn. 1.

[2] Four children were born as a result of this union: Ch.J., Al.J., M.J. and B.J. (Case No. 2016 3047, Doc. No. 14); (Case No. 2016 3048, Doc. No. 14); (Case No. 2016 3049, Doc. No. 1); and (Case No. 2017 3004, Doc. No. 8). M.J. and B.J. had reached the age of majority before the agency became involved with the family. (*See* Michael's Ex. A). Al.J., born in 2000, was in the temporary custody of the agency (through case number 2017 3003) until she left her foster care placement upon reaching the age of majority. (Case

-3-

406-407). (*See* Agency Ex. 8). Theresa is now deceased and Michael is married to Montana. (May 7, 2019 Tr., Vol. III, at 406-407).

{¶4} Co.J., born in 2015, D.J., born in 2014, and A.J., ("An.J.") born in 2012, to their parents Michael and Montana. (*Id.* at 407). (*See* Agency Ex. 8).

{¶5} On December 23, 2016, the agency filed a complaint alleging Co.J., D.J., and An.J. to be neglected and dependent children under R.C. 2151.03(A)(2) and (3); 2151.04(B) and (C). (Case No. 2016 3047, Doc. No. 1); (Case No. 2016 3048, Doc. No. 1); (Case No. 2016 3049, Doc. No. 1). That same day, the agency filed a motion requesting that the trial court grant it emergency-temporary custody to the agency of Co.J., D.J., and An.J., which the trial court granted. (Case No. 2016 3047, Doc. No. 12); (Case No. 2016 3048, Doc. No. 12); and (Case No. 2016 3049, Doc. No. 12).

{¶6} On January 25, 2017, the agency filed a complaint alleging Ch.J. to be a neglected, abused, and dependent child under R.C. 2151.03(A)(2) and (3), 2151.031(D), and 2151.04(B), (C), and (D)(1) and (2). (Case No. 2017 3004, Doc. No. 1). The agency filed a motion requesting temporary custody, which the trial court granted. (Case No. 2017 3004, Doc. No. 8).

---

No. 2016 3047, Doc. No. 88); (Case No. 2016 3048, Doc. No. 88); (Case No. 2016 3049, Doc. No. 86); and (Case No. 2017 3004, Doc. No. 84). (Apr. 30, 2019 Tr., Vol. I, at 143). (May 7, 2019 Tr., Vol. III, at 470).

{¶7} After a hearing on January 27, 2017, the trial court concluded that probable cause existed to believe that Co.J., D.J., and An.J. were neglected or dependent children and Ch.J. was a neglected, dependent, or abused child; that it was in the children's best interest that the children remain in the temporary custody of the agency; and that "*reasonable efforts* to prevent the need for removal of said children from their home were made in that the agency has been working with the family and has provided protective supervision on two separate occasions * * *." (Emphasis sic.) (Case No. 2016 3047, Doc. No. 15); (Case No. 2016 3048, Doc. No. 15); (Case No. 2016 3049, Doc. No. 15); and (Case No. 2017 3004, Doc. No. 8).

{¶8} At the adjudicatory hearing on January 31, 2017, Michael and Montana admitted that Co.J., D.J., and An.J. were neglected and dependent children under R.C. 2151.03 and R.C. 2151.04. (Case No. 2016 3047, Doc. No. 16); (Case No. 2016 3048, Doc. No. 16); and (Case No. 2016 3049, Doc. No. 16). Further, the trial court adjudicated Ch.J., a dependent child under R.C. 2151.04 dismissing the remaining abuse and neglect allegations contained in that complaint. (Case No. 2017 3004, Doc. No. 9).

{¶9} At the April 24, 2017 dispositional hearing, the trial court ordered that Co.J., D.J., An.J., and Ch.J. ("the children") remain in the temporary custody of the agency and "found *reasonable efforts* were made by [the agency] to prevent the

need for removal of said children from their home in that the Agency has been working with the family and has provided protective supervision, Help Me Grow services, Century Health services, cleaning supplies, trash bags, and smoke detectors."[3] (Emphasis sic.) (Case No. 2016 3047, Doc. No. 18); (Case No. 2016 3048, Doc. No. 18); (Case No. 2016 3049, Doc. No. 18); and (Case No. 2017 3004, Doc. No. 13).

{¶10} On November 20, 2017, the agency filed motions for permanent custody in each of the children's cases.[4] (Case No. 2016 3047, Doc. No. 27); (Case No. 2016 3048, Doc. No. 27); (Case No. 2016 3049, Doc. No. 26); and (Case No. 2017 3004, Doc. No. 25). However, the agency withdrew their original motions for permanent custody and requested two case-plan extensions on May 18, 2018 which the trial court granted on June 14, 2018. (Case No. 2016 3047, Doc. Nos. 56, 58); (Case No. 2016 3048, Doc. Nos. 56, 58); (Case No. 2016 3049, Doc. Nos. 54, 56); and (Case No. 2017 3004, Doc. Nos. 51, 53). However, the agency filed a second motion for permanent custody on December 17, 2018 in each of the children's cases. (Case No. 2016 3047, Doc. No. 71); (Case No. 2016 3048, Doc.

---

[3] Throughout the pendency of the case, the trial court approved the agency's case plans, which were submitted to the trial court on March 21, 2017, May 8, 2017, February 21, 2018, and February 7, 2019 respectively, and incorporated the case plans into its entries. (Case No. 2016 3047, Doc. Nos. 17, 18, 19, 20, 51, 74, 77); (Case Nos. 2016 3048, Doc. Nos. 17, 18, 19, 20, 51, 74, 77); (Case No. 2016 3049, Doc. Nos. 17, 18, 19, 20, 52, 73, 75); and (Case No. 2017 3004, Doc. Nos. 11, 13, 14, 15, 49, 70, 73).

[4] No motion for permanent custody was filed in case number 2017 3003 regarding Al.J. (Case No. 2016 3047, Doc. No. 88); (Case No. 2016 3048, Doc. No. 88); (Case No. 2016 3049, Doc. No. 86); and (Case No. 2017 3004, Doc. No. 84). (Apr. 30, 2019 Tr., Vol. I, at 143). (May 7, 2019 Tr., Vol. III, at 470).

No. 71); (Case No. 2016 3049, Doc. No. 69); and (Case No. 2017 3004, Doc. No. 66).  Michael filed a motion for legal custody on March 4, 2019.  (Case No. 2016 3047, Doc. No. 78); (Case No. 2016 3048, Doc. No. 78); (Case No. 2016 3049, Doc. No. 76); and (Case No. 2017 3004, Doc. No. 74).

{¶11} The trial court appointed the children a Court Appointed Special Advocate/Guardian Ad Litem ("GAL") on January 5, 2017.  (Case No. 2016 3047, Doc. No. 6); (Case No. 2016 3048, Doc. No. 6); (Case No. 2016 3049, Doc. No. 6); and (Case No. 2017 3004, Doc. No. 6).  The court sua sponte permitted the children's original GAL to withdraw as GAL on October 29, 2018, and she was subsequently appointed as attorney for Ch.J.  (Case No. 2016 3047, Doc. No. 67); (Case No. 2016 3048, Doc. No. 67); (Case No. 2016 3049, Doc. No. 65); and (Case No. 2017 3004, Doc. No. 62).  Thereafter, the court appointed the children a new GAL.  (*Id.*); (*Id.*); (*Id.*), and (*Id.*).

{¶12} The new GAL filed a report in the trial court on April 25, 2019 recommending that the trial court grant permanent custody of the children to the agency, but requested the trial court continue to permit visitation between the children and the parents at the visitation center.  (Case No. 2016 3047, Doc. No. 85); (Case No. 2016 3048, Doc. No. 85); (Case No. 2016 3049, Doc. No. 83); and (Case No. 2017 3004, Doc. No. 81).

**{¶13}** After conducting the permanent-custody hearing on April 30, 2019, May 1, 2019, and May 7, 2019, the trial court granted permanent custody of the children to the agency on May 17, 2019. (Case No. 2016 3047, Doc. No. 88); (Case No. 2016 3048, Doc. No. 88); (Case No. 2016 3049, Doc. No. 86); and (Case No. 2017 3004, Doc. No. 84).

*Montana's Appeal*

**{¶14}** On September 20, 2019, Montana's appointed counsel filed a request to withdraw pursuant to *Anders*, 386 U.S. 738, 87 S.Ct. 1396. Counsel asserted after reviewing the court file, including the transcript of the proceedings, no error prejudicial to Montana could be argued.

**{¶15}** The procedure to be followed by appointed counsel who desires to withdraw for want of a meritorious, appealable issue is set forth in *Anders*, as well as *State v. Duncan*, 57 Ohio App.2d 93 (8th Dist.1978). *In re A.M.*, 8th Dist. Cuyahoga No. 106789, 2018-Ohio-3186, ¶ 9, citing *Anders* and *Duncan*. The United States Supreme Court found in *Anders* that "after a conscientious examination of [the case]," if counsel determined an appeal to be "wholly frivolous," counsel "should so advise the court and request permission to withdraw." *Anders* 386 U.S. at 744. *In re H.W.*, 6th Dist. Sandusky No. S-17-043 and S-17-046, 2018-Ohio-523, ¶ 25, citing *Anders* 386 U.S. at 744. This request must be accompanied by a brief with references to the record regarding anything

that might arguably support the appeal. *Id.*; *Id.* In addition, counsel must furnish the client with a copy of the brief and request to withdraw and allow the client sufficient time to raise any matters the client so chooses. *Id.* Once these requirements have been fulfilled, the appellate court must conduct a full examination of the proceedings held below to decide if the appeal is indeed frivolous. *Id.* If the appellate court determines the appeal is frivolous, it may grant counsel's request to withdraw and dismiss the appeal without violating constitutional requirements, or it may proceed to a decision on the merits if required by state law. *Id.*

*Michael's Appeal*

{¶16} Michael raises two assignments of error. For ease of discussion, we will address them together.

### Assignment of Error No.1

**The trial court's award of permanent custody of the children, Co.J., D.J. A.[n.]J. and Ch.J. to the Hancock County Job and Family Services—Children's Protective Services Unit was against the manifest weight of the evidence.**

### Assignment of Error No.2

**The Agency's case planning and efforts were not reasonable and diligent under the circumstances of the case.**

{¶17} In his assignments of error, Michael argues that the trial court erred in granting permanent custody of the children to the agency because it was against the

manifest weight of the evidence, and that the agency failed to make reasonable and diligent efforts toward reunification.

*Standard of Review*

{¶18} The right to raise one's child is a basic and essential right. *In re Murray*, 52 Ohio St.3d 155, 157 (1990), citing *Stanley v. Illinois*, 405 U.S. 645, 651, 92 S.Ct. 1208 (1972) and *Meyer v. Nebraska*, 262 U.S. 390, 399, 43 S.Ct. 625 (1923). "Parents have a 'fundamental liberty interest' in the care, custody, and management of the child." *Id.*, quoting *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388 (1982). However, the rights and interests of a natural parent are not absolute. *In re Thomas*, 3d Dist. Hancock No. 5-03-08, 2003-Ohio-5885, ¶ 7. These rights may be terminated under appropriate circumstances and when the trial court has met all due process requirements. *In re Leveck*, 3d Dist. Hancock Nos. 5-02-52, 5-02-53, and 5-02-54, 2003-Ohio-1269, ¶ 6, citing *In re Palmer*, 12 Ohio St.3d 194, 196 (1984), *cert. denied*, 469 U.S. 1162, 105 S.Ct. 918 (1985).

{¶19} When considering a motion for permanent custody of a child, the trial court must comply with the statutory requirements set forth in R.C. 2151.414. *See In re C.E.*, 3d Dist. Hancock Nos. 5-09-02 and 5-09-03, 2009-Ohio-6027, ¶ 14. R.C. 2151.414(B)(1) establishes a two-part test for courts to apply when determining whether to grant a motion for permanent custody. *In re S.G.*, 9th Dist. Wayne No. 15AP0005, 2015-Ohio-2306, ¶ 10. The trial court must find, by clear and

convincing evidence that: (1) the trial court must find that one of the circumstances in R.C. 2151.414(B)(1)(a)-(e) applies, and (2) the trial court must find that permanent custody is in the best interest of the child. *Id. See also In re Brown*, 98 Ohio App.3d 337, 343 (3d Dist.1994). R.C. 2151.414(B)(1) provides, in relevant part, that a trial court

> may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
>
> (a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, * * * and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
>
> * * *
>
> (d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state.

R.C. 2151.414(B)(1)(a), (d). "Specifically concerning R.C. 2151.414(B)(1)(a), '[i]f one or more of the factors enumerated in R.C. 2151.414(E) is found to be present by clear and convincing evidence, the trial court shall find that the child cannot be

placed with the parents within a reasonable period of time or should not be placed with the parents.'" *In re A.M.*, 3d Dist. Marion No. 9-14-46, 2015-Ohio-2740, ¶ 13, quoting *In re A.F.*, 3d Dist. Marion No. 9-11-27, 2012-Ohio-1137, ¶ 54, citing *In re Goodwin*, 3d Dist. Shelby No. 17-08-12, 2008-Ohio-5399, ¶ 23.

{¶20} If the trial court makes these statutorily required determinations, a reviewing court will not reverse a trial court's decision unless it is not supported by clear and convincing evidence. *In re H.M.K.*, 3d Dist. Wyandot Nos. 16-12-15 and 16-12-16, 2013-Ohio-4317, ¶ 43, citing *In re Meyer*, 98 Ohio App.3d 189, 195 (3d Dist.1994), *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 368 (1985), and *In re Adoption of Lay*, 25 Ohio St.3d 41, 42 (1986). "Clear and convincing evidence is that which is sufficient to produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established." *In re S.G.* at ¶ 10, citing *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus. "Where the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *Ledford* at 477, citing *Ford v. Osborn*, 45 Ohio St. 1 (1887), *Cole v. McClure*, 88 Ohio St. 1 (1913), and *Frate v. Rimenik*, 155 Ohio St. 11 (1926). If some competent, credible evidence going to all the essential elements of the case supports the trial court's judgment, an appellate court must affirm the judgment and not substitute its

judgment for that of the trial court. *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 280-281 (1978).

{¶21} Moreover, issues relating to the credibility of witnesses and the weight to be given to the evidence are primarily for the trier-of-fact. *Seasons Coal v. Cleveland*, 10 Ohio St.3d 77, 80 (1984). Deferring to the trial court on matters of credibility is "crucial in a child custody case, where there may be much evidence in the parties' demeanor and attitude that does not translate to the record well." *Davis v. Flickinger*, 77 Ohio St.3d 415, 419 (1997).

{¶22} Furthermore,

'[w]eight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the [trier-of-fact] that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief."'

*Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 12, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), *superseded by statute and rev'd on other grounds, State v. Smith*, 80 Ohio St.3d 80 (1997), quoting Black's Law Dictionary 1594 (6th ed. 1990).

{¶23} When an appellate court reviews whether a trial court's permanent custody decision is against the manifest weight of the evidence, the court

'"weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered."'

*Eastley* at ¶ 20, quoting *Tewarson v. Simon*, 141 Ohio App.3d 103, 115 (9th Dist.2001), quoting *Thompkins*, 78 Ohio St.3d at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983); accord *In re Pittman*, 9th Dist. Summit No. 20894, 2002-Ohio-2208, ¶ 23-24.

*Analysis*

{¶24} "The factors contained within R.C. 2151.414(B)(1)(a)-(e) are alternative findings, and only one must be met in order for the first prong of the permanent custody test to be satisfied." *In re S.G.*, 2015-Ohio-2306, at ¶ 11, citing *In re M.M.*, 9th Dist. Lorain Nos. 10CA009744, 10CA009745, 10CA009746, and 10CA009747, 2010-Ohio-2278, ¶ 12.

{¶25} In this case, the trial court concluded that R.C. 2151.414(B)(1)(a) and (d) were applicable. (Case No. 2016 3047, Doc. No. 88); (Case No. 2016 3048, Doc. No. 88); (Case No. 2016 3049, Doc. No. 86); and (Case No. 2017 3004, Doc. No. 84). "[T]he findings under R.C. 2151.414(B)(1)(a) and R.C. 2151.414(B)(1)(d) are alternative findings, [and] each is independently sufficient to use as a basis to grant the Agency's motion for permanent custody." *In re M.R.*, 3d Dist. Defiance No. 4-12-18, 2013-Ohio-1302, ¶ 80, citing *In re Langford Children*, 5th Dist. Stark

No. 2004CA00349, 2005-Ohio-2304, ¶17. Under the plain language of R.C. 2151.414(B)(1)(d), when a child has been in an agency's temporary custody for 12 or more months of a consecutive 22-month period, a trial court need not find that the child cannot be placed with either parent within a reasonable time or should not be placed with the parents. *In re I.G.*, 3d Dist. Marion Nos. 9-13-43, 9-13-44, and 9-13-45, 2014-Ohio-1136, ¶ 30, citing R.C. 2151.414(B)(1)(d); *In re A.M.*, 3d Dist. Marion No. 9-14-46, 2015-Ohio-2740, ¶ 14.

{¶26} After reviewing the evidence related to the children's custody situations under R.C. 2151.414(B)(1)(d), the record supports that the children had been in the temporary custody of the agency continuously since their removal in January 2017. The agency filed its permanent-custody motions on December 17, 2018 with the final hearing taking place on May 7, 2019. Thus, the record is clear that the children were in the temporary custody of the agency from January 2017 until May 2019 in excess of 12 months in a consecutive 22-month period.

{¶27} Accordingly, based on the evidence presented and because it is dispositive, we conclude that the trial court's determinations under R.C. 2151.141(B)(1)(d) are sufficient to satisfy the first prong of the permanent-custody test and are not against the manifest weight of the evidence.

{¶28} Thus, having satisfied the first prong of the permanent-custody test, we proceed to the second prong of the test—the trial court's consideration of the best-

interest factors. R.C. 2151.414(D) contains the factors for a trial court to consider when determining whether granting permanent custody to an agency is in the best interests of a child. It reads as follows:

(D)(1) In determining the best interest of a child at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) or (5) of section 2151.353 or division (C) of section 2151.415 of the Revised Code, the court shall consider all relevant factors, including, but not limited to, the following:

(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

R.C. 2151.414(D)(1)(a)-(e).

{¶29} After reviewing the evidence in the record and determining the applicability of R.C. 2151.414 (B)(1)(d), the trial court addressed the best interest factors under R.C. 2151.414(D)(1)(a)-(e), ultimately, concluding by clear and convincing evidence that it was in the best interest of Co.J., D.J., An.J., and Ch.J. that the agency be awarded permanent custody.

{¶30} While the trial court did not refer to the subsections under R.C. 2151.414(D)(1)(a)-(e) explicitly, it addressed the evidence upon which it relied in consideration of the statutory factors and stated that it specifically considered R.C. 2151.144(D)(1)(a)-(e). *See In re M.R.*, 2013-Ohio-1302, at ¶ 78 ("While it is far from the better practice, we find that the trial court's citation to the appropriate statute when making its best interest finding meets its obligation, albeit to the minimum extent possible, in demonstrating that the R.C. 2151.414(D) factors were considered."). In addition, in its judgment entry, the trial court made findings relevant to the R.C. 2151.414(D) factors. *See id.,* ("Moreover, * * * there is clear and convincing evidence in the record to support the trial court's finding that it is in M.R.'s best interest to grant the Agency's motion for permanent custody.").

{¶31} Addressing R.C. 2151.414(D)(1)(a), which concerns the relationships with the children, the children's parents, siblings, relatives, and foster-care givers, the record contains evidence and the trial court noted that neither Michael nor Montana would engage the younger children during supervised visitations often

overfeeding them to the point they became ill and had to be reminded to change soiled diapers. The trial court referenced the credible testimony of children-services caseworker Rebecca Shumaker ("Shumaker") relating to the significance of the bond between the younger and older siblings, the lack of any relationship of the younger siblings with extended family, Ch.J.'s bond with both Michael and her extended family, and the younger children's relationship with their current foster family.

{¶32} Regarding factor (D)(1)(b), concerning the wishes of the child as expressed directly or through the recommendation of the GAL, the GAL filed a report recommending that permanent custody be granted to the agency, but requested that the trial court permit the parent's to be able to continue visitations through the visitation center.

{¶33} Lastly, the trial court discussed factors (D)(1)(c) and (D)(1)(d), which concerns the children's custodial history and their need for permanency. Specifically, the trial court found that the children had been in the temporary custody of the agency for 12 or more months of a consecutive 22-month period.

{¶34} After reviewing the best-interest factors on appeal, we find that there is clear and convincing evidence in the record to support the trial court's determination that granting permanent custody to the agency was in the best

interests of the children.  Accordingly, the trial court's decision is not against the

manifest weight of the evidence.

*Reasonable Efforts*

{¶35} Turning to the Michael's reasonable-efforts argument, we conclude

that the trial court made the appropriate reasonable-efforts finding.

> No one section of the Revised Code addresses the concept of reasonable efforts.  Overall, Ohio's child-welfare laws are designed to care for and protect children, "whenever possible, in a family environment, separating the child from the child's parents only when necessary for the child's welfare or in the interests of public safety." R.C. 2151.01(A).  To that end, various sections of the Revised Code refer to the agency's duty to make reasonable efforts to preserve or reunify the family unit.

*In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, ¶ 29.  In particular, under R.C.

2151.419, when a trial court

> removes a child from the child's home or continues the removal of a child from the child's home, the court shall determine whether the public children services agency * * * has made reasonable efforts to prevent the removal of the child from the child's home, to eliminate the continued removal of the child from the child's home, or to make it possible for the child to return safely home.

R.C. 2151.419(A)(1).  The Supreme Court of Ohio

> determined that the trial court is not obligated, under R.C. 2151.419, to make a determination that the agency used reasonable efforts to reunify the family at the time of the permanent custody hearing *unless* the agency has not established that reasonable efforts have been made prior to the hearing.

(Emphasis sic.) *In re N.R.S.*, 3d Dist. Crawford Nos. 3-17-07, 3-17-08, and 3-17-09, 2018-Ohio-125, ¶ 25, citing *In re C.F.* at ¶ 41, 43 (concluding that the reasonable-efforts determination under R.C. 2151.419 does not apply to permanent-custody motions under R.C. 2151.413 or to hearings on such motions under R.C. 2151.414).

> According to the Ohio Supreme Court, the trial court is only obligated to make a determination that the agency has made reasonable efforts to reunify the family at "adjudicatory, emergency, detention, and temporary-disposition hearings, and dispositional hearings for abused, neglected, or dependent children, all of which occur prior to a decision transferring permanent custody to the state."

*In re B.S.*, 3d Dist. Allen No. 1-15-44, 2015-Ohio-4805, ¶ 36, quoting *In re C.F.* at ¶ 41.

{¶36} Because the trial court made its reasonable-efforts finding when it granted emergency custody to the agency by ex-parte order as well as at the time of the probable-cause and dispositional hearings, the trial court was not required to make any further reasonable-efforts findings. (*See* Case No. 2016 3047, Doc. Nos. 15, 18); (Case No. 2016 3048, Doc. Nos. 15, 18); (Case No. 2016 3049, Doc. Nos. 15, 18); and (Case No. 2017 3004, Doc. Nos. 8, 13); *In re S.D.*, 9th Dist. Lorain Nos. 15CA010864 and 15CA010867, 2016-Ohio-1493, ¶ 25. Stated another way, because the trial court previously made the requisite R.C. 2151.419 "reasonable efforts" findings, it was not required to again make those findings at the hearing on

the agency's motion for permanent custody filed under R.C. 2151.413. *See In re C.F.* at ¶ 43.

{¶37} Here, the trial court specifically concluded that the agency had made "*reasonable efforts * * ** to prevent the need for removal of said children from their home * * *." (Emphasis sic.) (Case No. 2016 3047, Doc. No. 18); (Case No. 2016 3048, Doc. No. 18); (Case No. 2016 3049, Doc. No. 18); and (Case No. 2017 3004, Doc. No. 13). In addition to the requirement under R.C. 2151.419(A)(1) that the trial court determine whether the agency made reasonable efforts to preserve or reunify the family unit, R.C. 2151.419(A)(1) further provides:

> If the agency removed the child from home during an emergency in which the child could not safely remain at home and the agency did not have prior contact with the child, the court is not prohibited, solely because the agency did not make reasonable efforts during the emergency to prevent the removal of the child, from determining that the agency made those reasonable efforts. In determining whether reasonable efforts were made, the child's health and safety shall be paramount.

R.C. 2151.419(A)(1).

{¶38} The trial court's reasonable-efforts finding is supported by clear and convincing evidence in the record. The record reveals that the parents had worked with the children's services agency since 2013 regarding their issues in parenting their children. (*See* May 7, 2019 Tr., Vol. III, at 402-404).

{¶39} For these reasons, we conclude that the trial court's reasonable-efforts finding does not run afoul of the requirements of R.C. 2151.419(A)(1). That is, the

trial court correctly identified that Co.J., D.J., An.J., and Ch.J. were removed from their home during an emergency in which they could not safely remain in the home. Thus, based on the facts and circumstances of these cases, Co.J., D.J., An.J., and Ch.J.'s health and safety were paramount to any service that Michael argues that the agency could have afforded to him. *See In re K.M.S.*, 3d Dist. Marion Nos. 9-15-37, 9-15-38, and 9-15-39, 2017-Ohio-142, ¶ 68 ("'Nevertheless, the issue is not whether there was anything more that [the agency] could have done, but whether the [agency's] case planning and efforts were reasonable and diligent under the circumstances of this case.'"), quoting *In re Leveck*, 2003-Ohio-1269, at ¶ 10.

{¶40} Accordingly, we conclude that the trial court did not err by granting permanent custody of Co.J., D.J., An.J., and Ch.J. to the agency. Therefore, Michael's assignments of error are overruled.

{¶41} Moreover, upon this Court's full examination of the record, we agree that there are no non-frivolous appealable issues in this case. *Penson v. Ohio*, 488 U.S. 75, 80, 109 S.Ct. 349, 35 (1988), ("Only after this separate inquiry, and only after the appellate court finds no nonfrivolous issue for appeal [i.e., arguable issues], may the court proceed to consider the appeal on the merits without the assistance of counsel.").

{¶42} Having reviewed the entire record and having found that no arguably meritorious issues exists, this Court concludes that Montana's appeal is wholly

frivolous under *Anders*. Consequently, Montana's appointed counsel's motion to withdraw is well-taken.

{¶43} Having found no error prejudicial to the appellants herein in the particulars assigned and argued, we affirm the judgments of the trial court.

***Judgments Affirmed***

**SHAW, P.J. and WILLAMOWSKI, J., concur.**

**/jlr**