[Cite as *In re J.C.*, 2024-Ohio-5252.]

IN THE COURT OF APPEALS OF OHIO
THIRD APPELLATE DISTRICT
HANCOCK COUNTY

IN RE:

    J.C.,

ADJUDICATED
DEPENDENT CHILD.

[ERICA A. - APPELLANT]
[RODNEY C. - APPELLANT]

CASE NO. 5-24-01

**O P I N I O N**

IN RE:

    Zy.A.,

ADJUDICATED
DEPENDENT CHILD.

[ERICA A. - APPELLANT]

CASE NO. 5-24-02

**O P I N I O N**

IN RE:

    Za.A.,

ADJUDICATED
DEPENDENT CHILD.

[ERICA A. - APPELLANT]

CASE NO. 5-24-03

**O P I N I O N**

Case Nos. 5-24-01, 5-24-02 and 5-24-03


**Appeals from Hancock County Common Pleas Court**
**Juvenile Division**
**Trial Court Nos. 2022 AND 0031, 2022 AND 0032 and 2022 AND 0033**

**Appeal of Rodney C. is dismissed**
**Judgments Affirmed in Cases 5-24-01, 5-24-02 and 5-24-03**

**Date of Decision:  November 4, 2024**

---

**APPEARANCES:**

*Howard A. Elliot* **for Appellant, Erica A**

*Timothy J. Hoover* **for Appellant, Rodney C.**

*Justin J. Kahle* **for Appellee**


**ZIMMERMAN, J.**

**{¶1}** Mother-appellant, Erica A. ("Erica"), appeals the December 29, 2023 judgments of the Hancock County Court of Common Pleas, Juvenile Division, granting permanent custody of her minor children, J.C., Zy.A., and Za.A., to the Hancock County Job and Family Services, Children's Protective Services Unit (the "agency").  Father-appellant, Rodney C. ("Rodney"), appeals the trial court's judgment with respect to his and Erica's minor son, J.C.  Rodney's appointed counsel filed a brief in accordance with *Anders v. California*, 386 U.S. 738 (1967). For the reasons that follow, we affirm the judgments of the trial court in Erica's appeal, and we dismiss Rodney's appeal.

**{¶2}** Rodney and Erica are the parents of J.C., born in 2020. Erica is also the mother of twins, Zy.A. and Za.A., born in 2022. No father has been named for the twins.

**{¶3}** These cases commenced on April 20, 2022 when the agency filed complaints alleging J.C., Zy.A., and Za.A. to be neglected children under R.C. 2151.03(A)(2) and dependent children under R.C. 2151.04(C).

**{¶4}** After a shelter-care hearing on April 26, 2022, the trial court concluded that probable cause existed to believe that J.C., Zy.A., and Za.A. were neglected and dependent children; that it was in the children's best interest to be placed in the temporary custody of the agency; and that the agency

> made *reasonable efforts* to avoid removing the [children] from [their] home including case management, information and referrals, a safety plan, a relative placement and mental health and substance assessments and counseling.

(Emphasis in original.) (Case No. 2022 AND 0031, Doc. No. 9); (Case No. 2022 AND 0032, Doc. No. 6); (Case No. 2022 AND 0033, Doc. No. 6).

**{¶5}** An adjudication hearing was held on July 15, 2022. By agreement of the parties, J.C., Zy.A., and Za.A. were found to be dependent children under R.C. 2151.04(C) and the allegations of neglect were stricken from the complaints. The trial court further ordered that the children remain in the temporary custody of the agency.

{¶6} On March 10, 2023, following a review hearing, the trial court granted the agency's motion for a six-month extension of temporary custody of the three children. As to reasonable efforts made by the agency, the trial court found that

> the [a]gency has made reasonable efforts to finalize a permanency plan and avoid continued removal of the children in that they have provided domestic violence counseling services, mental health counseling services, help me grow referral and services, case management services, parent education and visitation to the parents of the children.

(Case No. 2022 AND 0031, Doc. No. 88); (Case No. 2022 AND 0032, Doc. No. 79); (Case No. 2022 AND 0033, Doc. No. 79).

{¶7} On July 24, 2023, the agency filed motions for permanent custody of J.C., Zy.A., and Za.A. After a permanent-custody hearing on December 8 and 12, 2023, the trial court granted permanent custody of J.C., Zy.A., and Za.A. to the agency on December 29, 2023. As to reasonable efforts of the agency, the trial court found that

> reasonable efforts have been made by [the agency] in that the following services have been made [available] to the parents including completed safety plans, relative searches, home studies, money for cabs and HATS tickets for transportation, a PRC application, information and referrals, case plan services, recommendations for open apartments, CCMEP program.

(Case No. 2022 AND 0031, Doc. No. 124); (Case No. 2022 AND 0032, Doc. No. 108); (Case No. 2022 AND 0033, Doc. No. 108). The trial court further found that

the agency made "reasonable efforts to finalize a permanency plan" in that it "conducted a search for relatives" and "filed for permanent custody." (*Id.*).

{¶8} Erica filed her notices of appeal on January 4, 2024. She raises a single assignment of error for our review. Rodney filed his notice of appeal in J.C.'s case on January 17, 2024. On July 8, 2024, Rodney's appointed counsel filed an *Anders* brief presenting two potential assignments of error. We will address Erica's sole assignment of error first, followed by Rodney's proposed assignments of error.

## Erica's Assignment of Error

**The Appellant/Mother was prejudiced by the Agency's failure to use reasonable efforts to reunite the mother with her children, requiring the permanency order to be vacated.**

{¶9} In her sole assignment of error, Erica argues that the trial court erred by granting permanent custody of J.C., Zy.A., and Za.A. to the agency because the agency failed to make reasonable efforts toward reunification. Specifically, Erica contends that the agency failed to make reasonable efforts to assist her with transportation for visitation or to help her find safe and stable housing.

### *Standard of Review*

{¶10} "We review under an abuse-of-discretion standard a trial court's finding that an agency made reasonable efforts toward reunification." *In re A.M.*, 2015-Ohio-2740, ¶ 24 (3d Dist.). An abuse of discretion suggests the trial court's

decision is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

*Analysis*

**{¶11}** The concept of "reasonable efforts" has been defined as "the state's efforts, after intervening to protect a child's health or safety, to resolve the threat to the child before removing the child from the home or to return the child to the home after the threat is removed." *In re I.H.*, 2020-Ohio-4853, ¶ 23 (6th Dist.), citing *In re C.F.*, 2007-Ohio-1104, ¶ 28. However,

> [n]o one section of the Revised Code addresses the concept of reasonable efforts. Overall, Ohio's child-welfare laws are designed to care for and protect children, "whenever possible, in a family environment, separating the child from the child's parents only when necessary for the child's welfare or in the interests of public safety." To that end, various sections of the Revised Code refer to the agency's duty to make reasonable efforts to preserve or reunify the family unit.

*In re C.F.* at ¶ 29, quoting R.C. 2151.01(A). In particular, under R.C. 2151.419, when a trial court

> removes a child from the child's home or continues the removal of a child from the child's home, the court shall determine whether the public children services agency . . . has made reasonable efforts to prevent the removal of the child from the child's home, to eliminate the continued removal of the child from the child's home, or to make it possible for the child to return safely home.

R.C. 2151.419(A)(1). *See In re T.S.*, 2015-Ohio-1184, ¶ 27 (3d Dist.) (noting that the child's welfare is paramount when making a reasonable-efforts determination under R.C. 2151.419(A)(1)).

{¶12} In these cases, the trial court made a reasonable-efforts determination under R.C. 2151.419(A)(1) in its April 26, 2022 entries placing J.C., Zy.A., and Za.A. in the temporary custody of the agency. Specifically, the trial court concluded that the agency made reasonable efforts to avoid the removal of the children from their home through case management, information and referrals, a safety plan, a relative placement, and mental health and substance assessments and counseling. The trial court made another reasonable-efforts determination in its March 10, 2023 entries granting the agency's motion for a six-month extension of temporary custody. In particular, the trial court concluded that the agency made reasonable efforts to eliminate the continued removal of the children from their home through safety plans, relative searches, home studies, cab fares and tickets for transportation, housing application, information and referrals, case plan services, and recommendations for open apartments. Therefore, prior to the hearing on the agency's motions for permanent custody, the trial court had already determined that the agency made reasonable efforts toward reunification. *See In re C.F.*, 2007-Ohio-1104, at ¶ 41.

{¶13} On appeal, Erica argues that the trial court abused its discretion by determining that the agency made reasonable efforts toward reunification. In particular, Erica argues that the agency failed to make reasonable efforts because it did not assist her with transportation or help her find safe and stable housing. Erica

concedes that "things went slightly awry" and "life became more complicated" when she moved to Kentucky. (Appellant's Brief at 10). Nevertheless, Erica blames the agency for her failure to successfully complete the case plan.

{¶14} "Case plans are the tool that child protective service agencies use to facilitate the reunification of families who . . . have been temporarily separated." *In re Evans*, 2001 WL 1333979, *3 (3d Dist. Oct. 30, 2001). "'[C]ase plans establish individualized concerns and goals, along with the steps that the parties and the agency can take to achieve reunification.'" *In re T.S.* at ¶ 27, quoting *In re A.M.*, 2015-Ohio-2740, at ¶ 25 (3d Dist.). "Agencies have an affirmative duty to diligently pursue efforts to achieve the goals in the case plan." *In re A.M.A.*, 2013-Ohio-3779, ¶ 29 (3d Dist.). Importantly, the agency's case planning and efforts need only be reasonable and diligent under the circumstances of the case. *In re A.M.A.* at ¶ 29.

> "'Reasonable efforts' does not mean all available efforts. Otherwise, there would always be an argument that one more additional service, no matter how remote, may have made reunification possible."

*In re H.M.K.*, 2013-Ohio-4317, ¶ 95 (3d Dist.), quoting *In re M.A.P.*, 2013-Ohio-655, ¶ 47 (12th Dist.).

{¶15} The record reveals that the children were placed in the temporary custody of the agency, in part, due to domestic violence between Erica and her then-boyfriend that resulted in Erica being homeless. The agency developed a case plan to address the reasons for the removal and to facilitate reunification of the family.

As set forth in the case plan, Erica was to complete services with a home coach, domestic violence counseling, mental health counseling, visitation, and provide a safe and stable home. Erica did not successfully complete any of these services. Critically, Erica failed to progress to unsupervised visitation with the children and was unable to maintain a safe and stable home.

{¶16} As previously stated, when considering the agency's reasonable efforts, the issue is not whether there is anything more the agency could have done, but whether the case planning and efforts were reasonable and diligent under the circumstances. *See In re A.M.A.* at ¶ 29; *In re H.M.K.* at ¶ 95. Here, the record reflects that the agency's case planning and efforts were reasonable and diligent under the circumstances. Even though Erica blames the agency for her failure to successfully complete the case plan, the record supports the trial court's conclusion that Erica's own actions thwarted the agency's reunification efforts. When Erica relocated to Kentucky, the agency provided virtual visitation that she rarely attended. After Erica returned to Ohio, she refused in-person visitation offered by the agency. Moreover, throughout the pendency of these cases, Erica failed to maintain a safe and stable home.

{¶17} Accordingly, based on the record before us, we conclude that the trial court did not abuse it discretion by determining that the agency engaged in reasonable efforts toward reunification.

{¶18} Erica's sole assignment of error is overruled.

**Rodney's Appeal**

{¶19} In the *Anders* brief, Rodney's appointed counsel indicates that he has reviewed the record and can find no error in the trial court proceedings upon which to base meritorious issues for appeal. Rodney's appointed counsel requests permission to withdraw on the basis that the appeal is without merit and wholly frivolous.

{¶20} The two issues of potential error for review referenced in the *Anders* brief are as follows: (1) whether the trial court's ruling was against the manifest weight of the evidence, and (2) whether the agency failed to make reasonable efforts to reunify J.C. with Rodney.

{¶21} The record establishes that several witnesses testified at the permanent-custody hearing regarding the agency's reasonable efforts toward reunification and Rodney's failure to successfully complete the case plan. In particular, the program coordinator for supervised visitation testified that Rodney consistently failed to appear for visitation with J.C. Rodney failed to visit the child for nearly five months and never progressed to unsupervised visitation. The agency caseworker testified that Rodney frequently changed addresses and phone numbers such that it was difficult to communicate with him. Early in the case, Rodney tested positive for marijuana. Three days after the agency filed its motion for permanent

custody, Rodney tested positive for cocaine. Significantly, Rodney was never able to provide a safe and stable home.

{¶22} The trial court considered all relevant evidence and determined that, despite the agency's reasonable case planning and diligent efforts, Rodney's own actions thwarted the agency's reunification efforts. *See In re A.M.A.*, 2013-Ohio-3779, ¶ 29 (3d Dist.). The trial court further determined that Rodney had failed consistently and repeatedly to correct the reasons why J.C. had been removed from the home; that Rodney had abandoned the child; that the child had been in the temporary custody of the agency for approximately 13 months; and that it would be in the child's best interest to grant the agency's request for permanent custody. Clear and convincing evidence exists in the record to support the trial court's decision. *See In re Co.J.*, 2020-Ohio-538, ¶ 20 (3d Dist.) (stating that if there is clear and convincing evidence in the record to support the trial court's permanent-custody determination, then such decision is not against the manifest weight of the evidence).

{¶23} Based on this court's full examination of the record, we find that the two issues of potential error for review referenced in the *Anders* brief are without merit and wholly frivolous. Therefore, Rodney's appointed counsel's request for leave to withdraw is well-taken.

**{¶24}** Having found no error prejudicial to Erica in the particulars assigned and argued, we affirm the judgments of the trial court. Having further found that no arguably meritorious issues exist, we conclude that Rodney's appeal is wholly frivolous and dismiss his appeal.

*Appeal of Rodney C. – Dismissed*
*Judgments Affirmed in Cases*
*5-24-01, 5-24-02 and 5-24-03*

**WILLAMOWSKI, P.J. and MILLER, J., concur.**

**/hls**