[Cite as *In re P.H.*, 2021-Ohio-3726.]

| | | | |
|---|---|---|---|
| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

IN RE: P.H.

C.A. No.     29985

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.     DN20-03-000210

DECISION AND JOURNAL ENTRY

Dated: October 20, 2021

CARR, Judge.

{¶1}     Appellant Mother appeals the judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated her parental rights to her child P.H. and placed the child in the permanent custody of Summit County Children Services Board ("CSB" or "the agency"). This Court affirms.

I.

{¶2}     Mother is the biological mother of P.H. (d.o.b. 3/5/20).[1]  Although it was initially believed that the child's alleged father had signed a paternity affidavit in the hospital after the child's birth, CSB's attempt to verify that with the state child support agency was unsuccessful. Accordingly, there was nothing in the record to support the initial belief, and the case proceeded and was resolved with the understanding that the child's paternity was never established.

---

[1] Mother also has three older children who are not parties to this appeal.  Mother's oldest child is in the legal custody of a relative, and her twins were placed in the legal custody of a relative during a companion case that proceeded with the case involving P.H.

{¶3} Mother tested positive for amphetamines at 27 weeks' gestation with P.H. and positive for methamphetamine at the child's birth. Mother had a history of methamphetamine and heroin use and admitted to using methamphetamine three days before P.H. was born. Mother was unemployed and had no stable housing. The child's alleged father had a significant criminal history and an active warrant for his arrest on an assault charge. Based on these issues, CSB filed a complaint shortly after the child's birth alleging that P.H. was an abused, neglected, and dependent child. P.H. was placed in the emergency temporary custody of CSB upon her release from the hospital at four days old.

{¶4} P.H. was adjudicated a dependent child after Mother stipulated to the allegations in the complaint and the agency presented evidence in the alleged father's absence. CSB withdrew its allegations of abuse and neglect. After a dispositional hearing, P.H. was placed in the temporary custody of CSB. The juvenile court adopted the agency's case plan which required Mother to submit to a chemical dependency assessment and follow all recommendations. The alleged father was required to demonstrate the ability to provide for the child's basic needs and contact the caseworker if he wished to work towards reunification, as the agency had been unable to contact him since the shelter care hearing.

{¶5} After the first review hearing, the magistrate found that Mother had not remained in regular contact with the caseworker and was not involved in case plan services. The alleged father had had no contact with the agency. The child remained in CSB's temporary custody and Mother was allowed to visit with the child in the discretion of the caseworker and guardian ad litem.

{¶6} Almost nine months into the case, CSB moved for permanent custody. The agency alleged that the child could not or should not be returned to the parents' custody based on

various statutory grounds, and that an award of permanent custody was in the child's best interest. Mother filed alternative dispositional motions for legal custody and for a first six-month extension of temporary custody. CSB perfected service of its motion on Mother, the alleged father, and John Doe. After a hearing conducted approximately 14 months into the case, the juvenile court granted the agency's motion for permanent custody and terminated the parents' parental rights. Mother filed a timely appeal and now raises one assignment of error for review.

II.

**ASSIGNMENT OF ERROR**

> THE TRIAL COURT ABUSED ITS DISCRETION IN ITS GRANT OF PERMANENT CUSTODY TO [CSB], AND THE DECISION OF THE TRIAL COURT TO TERMINATE THE PARENTS' RIGHTS WAS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE AND WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶7} Mother argues that the juvenile court's judgment terminating all parental rights and awarding permanent custody of P.H. to CSB was against the manifest weight of the evidence. In addition, Mother argues that the juvenile court erred by not granting a six-month extension of temporary custody to give her more time to comply with her case plan objectives. This Court disagrees.

{¶8} In considering whether the juvenile court's judgment is against the manifest weight of the evidence, this Court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new [hearing] ordered." (Internal quotations and citations omitted.) *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20. When weighing the

evidence, this Court "must always be mindful of the presumption in favor of the finder of fact." *Id.* at ¶ 21.

{¶9} Before a juvenile court may terminate parental rights and award permanent custody of a child to a proper moving agency, it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned; orphaned; has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period; the child or another child of the same parent has been adjudicated abused, neglected, or dependent three times; or that the child cannot be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) that the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D)(1). R.C. 2151.414(B)(1) and 2151.414(B)(2); *see also In re William S.*, 75 Ohio St.3d 95, 98-99 (1996). The best interest factors include: the interaction and interrelationships of the child, the wishes of the child, the custodial history of the child, the child's need for permanence and whether that can be achieved without a grant of permanent custody, and whether any of the factors outlined in R.C. 2151.414(E)(7)-(11) apply. R.C. 2151.414(D)(1)(a)-(e); *see In re R.G.*, 9th Dist. Summit Nos. 24834, 24850, 2009-Ohio-6284, ¶ 11. Clear and convincing evidence is that which will "produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." (Internal quotations omitted.) *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 368 (1985), quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶10} As its first-prong ground, CSB alleged that P.H. could not or should not be returned to her parents' custody. *See* R.C. 2151.414(B)(1)(a). The juvenile court found that the agency satisfied its allegation based on the parents' failure to remedy the circumstances underlying the child's removal from her home pursuant to R.C. 2151.414(E)(1), which provides:

In determining at a hearing [on a motion for permanent custody] whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a [permanent custody] hearing * * * that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:

(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

{¶11} P.H. was taken into agency custody and care days after her birth after both Mother and the child tested positive for illegal drugs. As paternity had not been established, there was no known father who might have been deemed appropriate and able to provide a safe environment for the child. No alleged father contacted CSB during the case to express an interest in establishing a relationship with P.H. or in seeking custody of the child. Accordingly, the child's father did not remedy the concerns that prevented reunification of P.H. with her father.

{¶12} Mother admittedly had struggled with substance abuse issues for several years when the child was born. She historically had predominantly used methamphetamine. The CSB caseworker made a referral to Community Health Center ("CHC") for Mother and scheduled two separate dates for a drug assessment. The caseworker explained to Mother that CHC was the best option to facilitate drug treatment and later recommend housing and employment programs after she got her addiction issues under control.

{¶13} Although the caseworker told Mother she would transport her for the substance abuse assessment, Mother did not respond to the caseworker's calls or texts and did not tell the caseworker where to pick her up. Mother missed both assessment dates. Mother then told the caseworker that she planned to seek services at IBH Addiction Recovery ("IBH"). That facility refused to provide information to the caseworker without a release, but IBH did verify that they had no records regarding anyone by Mother's name.

{¶14} Mother initiated services at New Destiny Treatment Center ("New Destiny"). She completed an assessment in mid-March 2020, but then did not return until late April 2020, to discuss a treatment plan. After that, Mother participated in four counseling sessions and three random drug screens up to early June 2020, at which time Mother ceased engaging in services. Although her three screens tested negative for drugs, another drug screen performed by CSB during that same period was positive for methamphetamine.

{¶15} New Destiny terminated Mother's services for non-compliance in August 2020. Mother returned in September 2020, to reengage in services and completed another intake session by phone. She failed to follow through with further services at that time, however. In February 2021, Mother again returned to New Destiny, admitted she had recently used methamphetamine, and once more participated in the initial intake to reengage in drug treatment services. After Mother failed to stay in touch with that service provider after that third intake session, New Destiny again discharged Mother from their program.

{¶16} Mother submitted to six random drug screens at CSB's request on May 14, 2020, June 29, 2020, August 10, 2020, October 15, 2020, December 31, 2020, and February 11, 2021. She tested positive for methamphetamine each time. She never fully engaged in drug treatment or demonstrated the ability to attain and maintain sobriety. Accordingly, CSB established by

clear and convincing evidence that Mother failed to remedy the major issue that necessitated the child's removal from her care.

{¶17} The juvenile court's best interest determination was also supported by clear and convincing evidence. After her four-day hospital stay after birth, P.H. has spent her entire life in foster care. She is closely bonded with the foster parents. P.H. also knows and has a bond with Mother. Mother has attended to the child's needs during visits. The agency workers and guardian ad litem all testified that Mother was always appropriate with the child. Mother was able to visit with P.H. in public places chosen by Mother, so many visits took place in parks and libraries. Of Mother's 38 scheduled visits, she failed to appear or confirm for 13, resulting in their cancelation. Mother was late for 16 of her remaining 25 visits. Mother also had the opportunity to visit virtually with the child.

{¶18} At 14 months old, P.H. was not capable of expressing her wishes regarding custody. The guardian ad litem opined that an award of permanent custody was in the child's best interest. She clarified that Mother's ongoing use of methamphetamine prevented Mother from being able to provide a safe and stable home for the child who was not able to self-protect.

{¶19} P.H. requires a stable and permanent home. No one has identified himself as the child's father and indicated a willingness and ability to care for the child. Mother has not addressed her severe addiction issues and is unable to provide a safe and stable home for P.H.

{¶20} As discussed above, Mother failed to initiate any substance abuse services at CHC or IBH. She testified that she had scheduled an intake appointment at IBH to occur during the week after the permanent custody hearing, but she failed to tell the caseworker about her plan. Mother began and quickly ceased any engagement in drug treatment services at New Destiny on

three separate occasions. She continued to use and test positive for methamphetamine throughout the case.

{¶21} Mother argues that her participation in substance abuse treatment was hindered by her lack of transportation. The caseworker testified that she offered bus passes to Mother. When Mother indicated to the visitation monitor that she did not know how to use the public bus system, the monitor offered to teach Mother how to do so. Mother later disputed that she did not understand how to ride the bus and claimed that she was merely uncomfortable riding public transportation given the ongoing virus pandemic and her health issues. Mother did not clarify her health condition with the caseworker, and Mother testified at the permanent custody hearing that her health did not in fact interfere with her ability to participate in services. The caseworker testified that she repeatedly told Mother that she would transport Mother to any appointment with notice. Mother admitted that she rarely took advantage of the caseworker's offer because she did not know whom she could trust. On occasions when Mother appeared for services or visits, she rode with a friend or used a private car service like Uber. In addition, both the agency caseworker and assessor at New Destiny testified that virtual services were readily available so that Mother could participate without exposure to others.

{¶22} Mother did not provide enough information to the caseworker or guardian ad litem to allow either of them to verify that Mother suffers from congestive heart failure as she claimed. Mother admitted that she had not told her cardiologist that she uses methamphetamine, and she acknowledged that it was not a good idea to use drugs if she had an underlying heart condition.

{¶23} Finally, Mother testified that she recognizes that she has issues which interfere with her ability to parent. She admitted that she uses methamphetamine and that she is

"[t]echnically * * * homeless." She explained that her lack of employment and inability to receive benefits have made it difficult for her to save money for a home. Mother testified that the child's father has not participated in the case because he grew up in the child welfare system and was afraid to get involved.

{¶24} Based on a thorough review of the record, this is not the exceptional case in which the trier of fact clearly lost its way and committed a manifest miscarriage of justice by terminating the parents' parental rights and awarding permanent custody of P.H. to CSB. The child's paternity was never established, and no alleged father pursued any type of relationship with the child or attempted to demonstrate that he could provide for her basic needs. Mother never addressed her substance abuse issues and continued to use methamphetamine throughout the case despite the agency's referrals for substance abuse treatment and offers to provide transportation, as well as the opportunity to participate remotely in counseling. Mother had no housing or ability to meet the basic needs of the child. Under these circumstances, CSB established by clear and convincing evidence that an award of permanent custody was in the best interest of the child. Accordingly, the juvenile court's judgment terminating Mother's and any father's parental rights and placing P.H. in the permanent custody of the agency was not against the manifest weight of the evidence.

{¶25} To the extent that Mother argues that the juvenile court's denial of her motion for a six-month extension of temporary custody was against the manifest weight of the evidence, this Court disagrees. Pursuant to R.C. 2151.415(D)(1), the juvenile court may extend the agency's temporary custody for six months if there is clear and convincing evidence that (1) an extension is in the best interest of the child, (2) there has been significant case plan compliance, and (3) there is reasonable cause to believe that reunification will occur within the period of extension.

The juvenile court's decision to grant or deny an extension of temporary custody is a discretionary one which will not be reversed absent an abuse of discretion. *In re A.S.*, 9th Dist. Summit No. 28743, 2017-Ohio-8984, ¶ 11. A trial court abuses its discretion when its attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶26} Although Mother filed her motion for a six-month extension of temporary custody approximately four months before the permanent custody hearing, she did not take advantage of that time to seriously engage in substance abuse treatment. In fact, at no time during the 14-month case did she participate in services to enable her to attain and maintain sobriety. When she did initiate services, she was ultimately terminated for non-compliance. Although she claimed to have scheduled yet another intake appointment for the week after the hearing, she had not informed the agency so the caseworker could not verify Mother's appointment. Throughout the case, Mother demonstrated no commitment to achieving sobriety. By the time of the permanent custody hearing, Mother failed to show any significant compliance with her case plan objective that might indicate that reunification with the child would reasonably be possible within the time requested for extension. Accordingly, the juvenile court did not unreasonably deny Mother's request for a six-month extension. Moreover, as this Court has already determined that an award of permanent custody was in the child's best interest, "the alternative disposition of extending temporary custody was not." *See id.*, quoting *In re S.D.*, 9th Dist. Lorain Nos. 15CA010864 and 15CA010867, 2016-Ohio-1493, ¶ 30. Mother's sole assignment of error is overruled.

III.

{¶27} Mother's sole assignment of error is overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

_____

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

DONNA J. CARR
FOR THE COURT

HENSAL, P. J.
CALLAHAN, J.
CONCUR.

APPEARANCES:

THOMAS C. LOEPP, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN R. DIMARTINO, Assistant Prosecuting Attorney, for Appellee.

BENJAMIN AYERS, Guardian ad Litem.