[Cite as *In re P.B.*, 2026-Ohio-1747.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

IN RE: P.B.

C.A. No.     31761

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.     DN 24 12 0848

DECISION AND JOURNAL ENTRY

Dated: May 13, 2026

SUTTON, Judge.

{¶1} Appellant Mother appeals the judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated her parental rights and placed her child in the permanent custody of Summit County Children Services Board ("CSB" or "the agency"). This Court affirms.

I.

{¶2} Mother and Father are the biological parents of P.B., born December 2, 2024. The parents had six older children, all of whom were removed from their custody. A circuit court in Monroe County, Indiana involuntarily terminated Mother's and Father's parental rights as to four of those children after the parents had over two years to work to remedy the concerns that led to the children's removals.

{¶3} After recently relocating to Ohio, Mother gave birth at 34 weeks' gestation to P.B. who was placed in the neonatal intensive care unit ("NICU") to address issues related to his prematurity. CSB received a referral reporting that Mother and Father seemed indifferent to the

infant and only visited him twice in the four days after his birth. After investigation, the agency learned of the parents' history of involvement with child welfare services regarding six other children, as well as their criminal and substance abuse histories. CSB filed a complaint alleging that P.B. was a dependent child and obtained an emergency order of temporary custody.

{¶4} Mother and Father waived their rights to both an adjudicatory hearing and initial dispositional hearing. By that time, the parents had left Ohio and relocated to Illinois. They stipulated to the child's dependency and placement in CSB's temporary custody, visitation provisions, and the adoption of the agency's case plan as an order. The case plan required each parent to obtain parenting evaluations and mental health assessments and follow all recommendations arising therefrom, submit to drug screens upon request, obtain substance use assessments upon testing positive or failing to screen and follow all subsequent recommendations, execute necessary releases of information, and resolve all pending criminal warrants and charges.

{¶5} Just over three months into the case, CSB moved for permanent custody. The agency alleged multiple statutory first-prong grounds and best interest considerations, focusing on the parents' prior involuntary terminations of parental rights regarding siblings of the child and their abandonment of P.B. The permanent custody hearing took place eight months later. Mother and Father attended remotely via Zoom. Their attorneys orally requested a six-month extension of temporary custody to allow the parents additional time to work toward reunification.

{¶6} At the hearing, Mother neither testified nor presented a case in chief. After considering the testimony of the CSB caseworker, Father, and the guardian ad litem, as well as other evidence admitted, the juvenile court issued a judgment granting the agency's motion, denying the parents' requests for a six-month extension of temporary custody, and terminating

Mother's and Father's parental rights to P.B. Mother timely appealed and now raises one assignment of error for review.

{¶7} As an initial matter, Mother has moved this Court to strike CSB's responsive brief or, alternatively, disregard the agency's reference to any facts not included in Mother's statement of the facts based on its failure to comply with App.R. 16. CSB declined to include a statement of facts relevant to the assignment of error as permitted by both App.R. 16(B) and Loc.R. 16(B). Mother cites no authority for striking the appellee's brief under these circumstances. Moreover, in reviewing issues on appeal, this Court has a duty to review the whole record and is not constrained from considering all facts relevant to the assigned errors, whether or not any party has set forth each one in a statement of facts. While the better practice for an appellee may be to focus this Court's attention on the relevant facts salient to that party's argument in the statement of facts, the rules do not prohibit a party from referring to facts in the argument portion of the brief that are not set out in the statement of facts. Accordingly, this Court declines Mother's request to disregard facts beyond those included in her statement of facts.

II.

### ASSIGNMENT OF ERROR

THE TRIAL COURT ERRED IN GRANTING PERMANENT CUSTODY TO [CSB] RATHER THAN GRANTING [MOTHER'S] REQUEST FOR A SIX-MONTH EXTENSION OF TEMPORARY CUSTODY.

{¶8} Rather than directly challenging the juvenile court's award of permanent custody of P.B. to CSB as being against the manifest weight of the evidence, Mother argues that the trial court abused its discretion by denying her request for a first six-month extension of temporary custody. This Court disagrees.

{¶9}    The juvenile court "may" extend temporary custody for up to six months under certain circumstances.  R.C. 2151.415(D).  We review the trial court's decision to grant or deny a request for an extension for an abuse of discretion.  *In re P.H.*, 2021-Ohio-3726, ¶ 25 (9th Dist.), citing  *In re A.S.*, 2017-Ohio-8984, ¶ 11 (9th Dist.).  The juvenile court abuses its discretion when it acts in an unreasonable, arbitrary, or unconscionable manner.  *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).  The trial court has authority to exercise its discretion to grant a first six-month extension of temporary custody, however, only if the moving party has proved by clear and convincing evidence all of the following: "the extension is in the best interest of the child, there has been significant progress on the case plan of the child, and there is reasonable cause to believe that the child will be reunified with one of the parents or otherwise permanently placed within the period of extension."  R.C. 2151.415(D)(1); *In re A.S.* at ¶ 11 (9th Dist.).

{¶10}   As the party moving for a six-month extension of temporary custody, Mother bore the burden of proof.  *See In re R.S.*, 2023-Ohio-2224, ¶ 46 (9th Dist.) (holding parents responsible for supporting their motions in child custody cases with the requisite burden of proof).  Mother did not testify or otherwise put on a case in chief in support of her request for an extension of temporary custody.  Nevertheless, as Mother's counsel cross-examined both the caseworker and Father, this Court will consider the testimony of both in determining whether there was clear and convincing evidence to support a six-month extension.

{¶11}   Mother argues that the evidence demonstrates that she made significant progress on most of her case plan objectives.  The record does not support her assertion.

{¶12}   In the eight months after the case plan took effect, Mother failed to obtain a mental health assessment and parenting evaluation.  Father claimed to have completed a mental health assessment the day before the hearing, but he had not executed a release of information to allow

the caseworker and guardian ad litem to verify and learn of the results. Father testified that he and Mother were aware that the caseworker wanted them to undergo substance abuse assessments as well, and that neither of them had complied with that request by the time of the hearing. Accordingly, no services designed to alleviate the concerns underlying the child's removal had been identified or initiated.

{¶13} In addition, there was no evidence that the parents could meet the child's basic needs. Father testified that he and Mother secured housing 20 days before the hearing. Prior to that, the parents' whereabouts had either been unknown or in temporary lodging with others. The parents failed to notify the caseworker and/or the guardian ad litem about their recently acquired housing, so neither had the opportunity to assess its propriety. In any event, Mother failed to prove that the parents had remedied their historic housing instability.

{¶14} There was further no evidence that the parents could meet the financial needs of the child. Father testified that he and Mother had signed up with a temporary employment agency, but that Mother had not had any jobs yet. He admitted that there were limited job opportunities available where they lived in Mother's area of experience, specifically, retail work. Father's last placement was a one-day job two weeks before the hearing. He testified that he earned approximately $150 that day and that the parents' rent and utilities are $650 per month. In the absence of evidence of stable income, Mother did not demonstrate that the parents could meet P.B.'s basic needs.

{¶15} Finally, Mother presented no evidence that she had resolved her criminal cases and warrants. The caseworker testified and the guardian ad litem reported that Mother had a pending felony child neglect charge and a misdemeanor public indecency charge. There were warrants for her arrest in both cases. Father testified that he was aware that there was a current warrant for

Mother's arrest in the misdemeanor case which mirrored his own criminal situation. He was not aware of a warrant in the felony case, and he thought that case had been resolved. Mother did not rebut the testimony of the caseworker, guardian ad litem, or Father regarding at least one pending warrant for her arrest. Accordingly, Mother had not resolved her criminal matters as required by the case plan.

{¶16} The caseworker testified that the parents made minimal progress on their case plan objectives, and the juvenile court agreed. That finding is supported by the evidence. Accordingly, this Court concludes that Mother failed to demonstrate by clear and convincing evidence that she had made significant progress on the case plan as required by R.C. 2151.415(D)(1) to support a first six-month extension of temporary custody.

{¶17} Moreover, Mother failed to prove by clear and convincing evidence that an extension of temporary custody was in P.B.'s best interest. The best interest factors the juvenile court must consider include the interaction and interrelationships of the child, the child's wishes, the custodial history of the child, his need for permanence, and whether any factors enumerated in R.C. 2151.414(E)(7)-(11) apply. R.C. 2151.414(D)(1)(a)-(e).

{¶18} P.B. spent his entire life, except for mere days before his release from the hospital after his birth, in CSB's temporary custody. Except for two in-person visits with the child in the NICU, the child has had no physical contact with either parent. Mother and Father attended six 30-minute remote visits over Zoom with the infant. The caseworker testified that Mother was often not visible on the screen during visits and that she rarely engaged with the child when she was on screen. The guardian ad litem opined that there could be no discernable parent-child bond absent more frequent and in-person visits given the child's infancy.

**{¶19}** The parents failed to address the concerns underlying the child's removal in any significant way and were, therefore, not in a position to provide a safe, stable, and appropriate home for P.B. Having spent nearly his entire life in custodial limbo, the child required permanence. He shared a strong bond with the foster parents who were providing for all his needs and were willing to continue to do so.

**{¶20}** Significantly, two R.C. 2151.414(E)(7)-(11) factors are relevant to this case. Both parents abandoned P.B. by failing to visit or maintain contact with him for a period of more than 90 days. R.C. 2151.414(E)(10); R.C. 2151.011(C). In addition, both parents had their parental rights involuntarily terminated with regard to at least one sibling of the child, and they failed to prove by clear and convincing evidence that, notwithstanding those prior terminations, they can now provide a legally secure permanent home for the child. R.C. 2151.414(E)(11). Under these circumstances, Mother failed to prove by clear and convincing evidence that extending temporary custody was in the child's best interest. R.C. 2151.415(D)(1).

**{¶21}** Finally, Mother failed to meet her burden of demonstrating reasonable cause to believe that P.B. would be reunified with either parent or otherwise permanently placed during the six-month period of extension. Mother makes no argument as to why reunification or other permanent placement would be likely within a six-month period of the extension of temporary custody. She argues only that an extension of time would give her the opportunity to "ease [CSB's] concerns" about housing, employment, and her other case plan objectives. By the time of the permanent custody hearing, however, Mother had made minimal progress on the case plan, even according credibility to Father's testimony that the parents had recently obtained appropriate housing.

{¶22} Mother and Father had not identified any appropriate relatives or kin who would be able to provide a permanent placement for P.B. within six months, so the agency had not been able to develop concurrent planning for the child's custody. It is axiomatic that permanent custody is not a permanent "placement," but rather a precursor to adoption which could not occur during the pendency of the juvenile case. Under the circumstances, given the parents' failure to make even modest progress on the case plan in eight months, coupled with their loss of custody of six other children due to their failure to remedy underlying and ongoing concerns, Mother failed to prove reasonable cause to believe that reunification would occur in another six months. R.C. 2151.415(D)(1).

{¶23} Based on a thorough review of the record, this Court concludes that Mother failed to meet her burden of proving by clear and convincing evidence that a first six-month extension of temporary custody was warranted under R.C. 2151.415(D)(1). Accordingly, the juvenile court had no authority to exercise its discretion to grant Mother's request. Mother's assignment of error is overruled.

## III.

{¶24} Mother's sole assignment of error is overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

 

 

BETTY SUTTON
FOR THE COURT

FLAGG LANZINGER, P. J.
HENSAL, J.
CONCUR.

APPEARANCES:

JOSEPH SHELL, Attorney at Law, for Appellant.

ELLIOT KOLKOVICH, Prosecuting Attorney, and ASHLEE JAMES, Assistant Prosecuting Attorney, for Appellee.